# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

STACIE PERCELLA,

                *Plaintiff,*

v.

CITY OF BAYONNE, JOSEPH WAKS,
INDIVIDUALLY, AND RICHARD CENSULLO,
INDIVIDUALLY

                *Defendants.*

Civil Action No. 14-cv-03695(KM)(MCA)

Civil Action

---

## DEFENDANTS', CITY OF BAYONNE, JOSEPH WAKS, AND RICHARD CENSULLO BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

On the Brief:

***FLORIO PERRUCCI STEINHARDT***
***CAPPELLI TIPTON & TAYLOR, LLC***
Teresa M. Lentini, Esquire (023341986)
Nicholas A. Sullivan, Esquire (243792018)
1010 Kings Highway South, Building 2
Cherry Hill, NJ 08034
Phone: (856) 835-5530
Fax: (856) 354-8318
Email: tlentini@floriolaw.com
      nsullivan@floriolaw.com
Attorneys for Defendants, City of Bayonne, Joseph
Waks, and Richard Censullo

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………..……i

TABLE OF AUTHORITIES…………………………………………………..…iii

PRELIMINARY STATEMENT ……………………………..…………….…..… 2

STATEMENT OF MATERIAL FACTS ……………………………………….......2

LEGAL STANDARD ……………………………………………………….…… 2

LEGAL ARGUMENT ……………………………………………….…..… 4

I.     PLAINTIFFS CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS……………………………………………………….....4

II.    DEFENDANTS CENSULO AND WAKS ARE ENTITLED TO SUMMARY JUDGEMENT FOR PERCELLA'S 42 U.S.C § 1983 CLAIMS BASED ON QUALIFIED IMMUNITY ……………………………………………..…... 4

III.   PLAINTIFF CANNOT PROVE ANY CLAIM FOR MUNICIPAL LIABILITY AGAINST DEFENDANTS CITY OF BAYONNE BECAUSE PLAINTIFF CANNOT POINT TO ANY POLICY OR CUSTOM THAT CAUSED ANY CONSTITUTIONAL DEPRIVATION ALLEGED BY PLAINTIFF …………….... 9

IV.   PERCELLA HAS FAILED TO STATE A CLAIM FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT UNDER § 1983 OR THE NEW JERSEY LAW AGAINST DISCRIMINATION ……………………………....... 15

    A. PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY RETALIATED AGAINST HER IN VIOLATION OF HER FIRST AMENDMENT RIGHTS UNDER § 1983 FOR THE NOVEMBER 2009 31-A ……………………………………………………………….. 17

    B. PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY RETALIATED AGAINST HER IN VIOLATION OF HER FIRST AMENDMENT RIGHTS UNDER § 1983 FOR HER SEXUAL HARASSMENT COMPLAINT AGAINST DEFENDANT CENSULLO ……….19

    C. PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY RETALIATED AGAINST HER IN VIOLATION OF HER FIRST AMENDMENT RIGHTS UNDER § 1983 FOR THE FERUARY 2011 31-A …………………………………………………………….. 21

    D. PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY RETALIATED AGAINST HER IN VIOLATION OF HER FIRST AMENDMENT RIGHTS UNDER § 1983 FOR THE JUNE 2013 DISCIPLINE OF PERCELLA ……………………………………..…. 23

E.  PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY
RETALIATED AGAINST HER IN VIOLATION OF HER FIRST
AMENDMENT RIGHTS UNDER § 1983 FOR THE INCIDENTS
OCCURRING ON JULY 8, 2013 AND JULY 9, 2013 ……………………........24

F.  PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY
RETALIATED AGAINST HER IN VIOLATION OF HER FIRST
AMENDMENT RIGHTS UNDER § 1983 FOR THE SEPTEMBER 2013
INCIDENT WITH DEFENDANT WAKS …………………………………........25

G.  PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY
RETALIATED AGAINST HER IN VIOLATION OF HER FIRST
AMENDMENT RIGHTS UNDER § 1983 FOR THE PENCIL INCIDENT
BETWEEN DEFENDANT WAKS AND PERCELLA …………………………27

H.  PERCELLA HAS FAILED TO ESTABLISH THE DEFENDANT CITY
RETALIATED AGAINST HER IN VIOLATION OF HER FIRST
AMENDMENT RIGHTS UNDER § 1983 FOR THE MAGNET INCIDENT
WITH DEFENDANT WAKS ……………………………………………….......27

V.  PERCELLA HAS FAILED TO ESTABLISH A CLAIM OF DISCRIMINATION,
HOSTILE WORK ENVIRONMENT AND HARASSMENT AGAINST
DEFENDANT CITY …………………………….............................................28

A.  PERCELLA HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF
SEX DISCRIMINATION BY DEFENDANT CITY DUE TO THE ACTIONS
OF DEFENDANT WAKS …………………………………………………..…31

B.  PERCELLA HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF
HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT AGAINST
THE DEFENDANT CITY …………………………………………………........33

VI.  PERCELLA HAS FAILED TO ESTABLISH A CLAIM OF AIDING AND
ABETTING AGAINST DEFENDANT WAKS AND DEFENDANT
CENSULLO NECESSARY TO ESTABLISH DISCRIMINATION, HOSTILE
WORK ENVIRONMENT AND HARASSMENT UNDER THE LAD …………...36

CONCLUSION ………………………………………………………………………..… 39

## TABLE OF AUTHORITIES

Cases

A.M. ex rel. J.M.K. v. Lucerne County Juvenile Detention Center, 372 F.3d 572, 580 (3d Cir. 2004)............................................................................................ 9

Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)....................................................... 2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)....................................... 2,3

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).................... 11,12

B.S. v. Somerset County, 704 F.3d 250, 275 n. 36 (3d Cir. 2013)................................. 12

Baker v. Monroe Township, 50 F.3d 1186, 1191 (3d Cir. 1995) ................................... 12

Baldassare v. State of N.J., 250 F.3d 188, 195 (3d Cir. 2001) ...................................... 16

Baliko v. Inter'l Union of Operating Eng'rs, 322 N.J. Super. 261, 277-78 (App. Div. 1995)..... 30

Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)..................................... 11,12

Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) ................................... 12

Bernstein v. State, 411 N.J. Super. 316, 339 (App. Div. 2010).................................... 5,6

Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) ......................................... 10,11

Boyce v. New York City Mission Society, 963 F.Supp. 290 (S.D.N.Y. 1997)............................ 30

Bradshaw v. Twp. of Middletown, 296 F. Supp. 2d 526, 542 (D.N.J. Dec. 4, 2003) ................. 20

Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)..................................................... 16

Burlington N 7 Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006). ....................................... 16,26

Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004)...................................... 10

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ....................................................... 3

Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 569-572 (2008)................................ 36

Cito v. Bridgewater Tp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989)..................................... 4

City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) ............................................... 9,12

City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) ............................................... 10

Davis v. City of Newark, 285 F. App'x 899, 904 (3d Cir. 2008) ........................................ 16

Emigh v. Steffee, 442 F. App'x 660, 665 (3d Cir. 2011) ................................................. 16

Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) .................................... 34,35,36

Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989) ................................................. 12

Fullman v. Pa. Dep't of Corr., 265 Fed. App'x 44, 46 (3d Cir. 2008) .................................... 4

Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)...................................... 4

Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008) ................................. 33

Gomez v. Toledo, 446 U.S. 635, 640 (1980)................................................................ 5

Gormley v. Wood-El, 218 N.J. 72, 113 (2014) ........................................................... 5,6

Hargrave v. County of Atlantic, 262 F.Supp.2d 393, 413 (D.N.J. 2003) .............................. 30,31

Harlow v. Fitzgerald, 457 U.S. 800 (1982).................................................................. 5

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)..................................................... 34,36

Hill v. Borough of Kutztown, 455 F. 3d 225, 241 (3d Cir. 2006) ........................................ 15

Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999) .................................. 37

Ivan v. County of Middlesex, 612 F.Supp.2d 546, 552-54 (D.N.J. 2009)................................ 37

Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989) ...................................... 11

Johnson v. Heimbach, No. Civ. A 03-2483, 2003 WL 22838476 at * 6 (E.D. Pa. Nov. 25, 2003), aff'd, 145 F. App'x 763 (3d Cir. 2005) ....................................................... 20

Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996) ..................................................... 11

Lapella v. City of Atl. City, No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012) ...... 13
Lauren W. ex rel. Jean W. v. DeFiaminis, 480 F.3d 259, 267 (3d Cir. 2007).................... 15,17,23
Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993) ....................................... 29,30
Luzerne County Juvenile Detention Center, 372 F.3d at 582 ...................................... 10
Malley v. Briggs, 475 U.S. 335, 341 (1986) ........................................................ 5
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) .................................. 3
Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523, 528 (D.N.J. 2000) ....................... 3
Miller v. Clinton Cnty., 544 F.3d 542, 548 (3d Cir. 2008) ....................................... 16,26
Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 690 (1978) ...................... 9,13
Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998)......................................... 13
Mulholland v. Governmental County of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013)......... 10,14
Panarello v. City of Vinland, 160 F. Supp. 3d 734, 763 (D.N.J. 2016) ................................. 13,14
Pearson v. Callahan, 555 U.S. 223, 231 (2009).................................................. 5,6
Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) ....................................... 11
Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) .............................................. 15
Revell v. City of Jersey City, 394 F. App'x 903, 905 (3d Cir. 2010)............................. 20
Reyes v. McDonalds Pontiac-GMC Truck, Inc., 997 F.Supp. 614, 617 (D.N.J. 1998)................ 29
Roa v. Roa, 200 N.J. 555, 566 (2010).......................................................... 4
Saucier v. Katz, 533 U.S. 194, 201 (2001) ..................................................... 5
Schiavo v. Marina Dist. Development Co, LLC, 442 N.J. Super. 346, 357-58 (App. Div. 2015)29
Shepherd v. Hunterdon Dev. Corp., 174 N.J. 1, 18-19 (2002) .................................... 35
Simmons v. City of Phila., 947 F.2d 1042, 1060 (3d Cir. 1991) ................................. 13
Springfield v. Kibbe, 480 U.S. 257, 267 (1987) ................................................ 9
Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008) ........................... 10
Suppan v. Dadonna, 203 F.3d 228, 236 (3d Cir. 2000) .......................................... 17
Tarr v. Ciasulli, 181 N.J. 70, 83 (2004) ..................................................... 36
Victor v. State, 203 N.J. 383, 408 (2010) .................................................... 28,29
Wallace v. Kato, 549 U.S. 384, 388 (2007)..................................................... 4
Wheeler v. City of Jersey City, No. CV 12-7528, 2016 WL 1029271, at *4
   (D.N.J. Mar. 14, 2016)..................................................................... 11,13
White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003)................................ 9
Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000) ...................................... 5

**Statutes**
N.J.S.A. 2A:14-2(a) ........................................................................... 4

42 U.S.C. § 1983 ........................................................................ 4, 6, 15, 20, 21

**Treatise**
Restatement (Second) of Torts § 876(b) comment d (1979) ....................................... 37

**Rules**
Fed. R. Civ. P. 56(a) ......................................................................... 2

## PRELIMINARY STATEMENT

Plaintiff Stacie Percella (hereinafter "Percella" or "Plaintiff") has initiated an action before the Court alleging the Defendant City of Bayonne (hereinafter "City"), Defendant Richard Censullo (hereinafter "Censullo"), and Defendant Joseph Waks (hereinafter "Waks") (collectively "Defendants") violated her civil rights under 42 U.S.C. § 1983 (hereinafter "§ 1983") and the New Jersey Law Against Discrimination (hereinafter "LAD") by engaging in retaliation, discrimination, harassment and/or creating a hostile work environment. As demonstrated below, Plaintiff's claims are barred by the applicable statute of limitations as her claims were brought over two years from the alleged occurrence or when Plaintiff should have known of the alleged injury. As demonstrated below, Plaintiff has failed to provide any evidence to meet her burden and substantiate her claims against the Defendants. Therefore, Plaintiff's claims should be missed with prejudice and Defendants Motion for Summary Judgment should be granted.

## STATEMENT OF MATERIAL FACTS

Pursuant to Federal Rules of Civil Procedure 56, the Defendants rely upon their Statement of Undisputed Material Facts annexed hereto in support of Defendants Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999). A factual dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or

unnecessary facts will not preclude granting a motion for summary judgment. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. Anderson, 477 U.S. at 250.  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting Anderson, 477 U.S. at 249–50)).  Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp., 477 U.S. at 322.

## LEGAL ARGUMENT

**I.      PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITIATIONS**

At the outset, all of Plaintiff's allegations against the Defendants that occurred more than two years prior to the filing of her initial Complaint are barred by the applicable statute of limitations. It is well settled that the statute of limitations for LAD claims is two years. Roa v. Roa, 200 N.J. 555, 566 (2010). Further, the accrual date of a Section 1983 civil rights action is entirely a question of federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007). "The limitation period for purposes of § 1983 claims begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the § 1983 action." Fullman v. Pa. Dep't of Corr., 265 Fed. App'x 44, 46 (3d Cir. 2008). The applicable limitations period for a § 1983 claim is the statute of limitations for personal injuries in the state in which the cause of action occurred. Wallace, 549 U.S. at 387. In New Jersey, the statute of limitations for personal injury claims, and by extension § 1983 claims, is two years. Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991); Cito v. Bridgewater Tp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989)(finding New Jersey's two-year limitations period on personal injury actions applies to a civil rights claim under § 1983); N.J.S.A. 2A:14-2(a).

As such, all of Plaintiff's claims occurring over two years prior to her filing of her initial Complaint on June 9, 2014, are time barred and must be dismissed pursuant to the applicable statute of limitations. See SOUMF at ¶ 1.

**II.     DEFENDANTS CENSULLO AND WAKS ARE ENTITLED TO SUMMARY JUDGMENT FOR PERCELLA'S 42 U.S.C. § 1983 CLAIMS BASED ON QUALIFIED IMMUNITY**

Defendants Censullo and Waks are  entitled to qualified immunity from Plaintiffs' 42 U.S.C. §1983 claims.  Qualified immunity protects government officials from liability  for civil

damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009)(citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). The essential inquiry in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right", and if so, "whether the right was clearly established." Bernstein v. State, 411 N.J. Super. 316, 339 (App. Div. 2010)(quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). In determining whether a right is clearly established, the right must be sufficiently clear so that a "reasonable competent officer" would have understood that he was violating a clearly established right. Id. at 339-40 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980) (In order to be protected by qualified immunity, the official must show that "his conduct was justified by an objectively reasonable belief that it was lawful.").

Whether an official is protected by qualified immunity is a matter of law to be decided by the court, "preferably on a properly supported motion for summary judgment or dismissal." Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000). Qualified immunity balances, the need to hold public officials accountable when "they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Gormley v. Wood-El, 218 N.J. 72, 113 (2014) (quoting Pearson, 555 U.S. at 231). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231–32. Indeed, "[t]his inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Id. at 244 (internal citations omitted).

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." Gormley, 218 N.J. at 113. In assessing whether a right is clearly established, the court should not engage in "broad, abstract reasoning, but rather, [the court's decision] should be based upon particular considerations" in light of the information available to the officer at the time. Bernstein, 411 N.J. Super. at 340.

At the outset, Percella does not allege a violation of 42 U.S.C. § 1983 against Defendant Censullo. See SOUMF ¶ 2, ¶¶ 16-20. As such, any claim against Defendant Censullo for violating § 1983 should be dismissed. Further, a reasonable municipal officer in the circumstances faced by Defendant Waks would have believed that his conduct would not have violated any constitutional rights. Pearson, 555 U.S. at 244. The record reflects that Defendant Waks did not retaliate against or deprive Percella of her civil rights under 42 U.S.C. § 1983. As discussed below, and in subsequent sections and subparts, Percella has presented no evidence that Defendant Waks, as alleged in the Amended Complaint, exercised his power irresponsibly nor has she provided a shred of evidence that Defendant Waks violated a clearly established constitutional right of Percella

The record demonstrates that Percella improperly entered another co-worker's office, took and copied personnel documents of Defendant Waks and two other employees, Vanessa Bryant ("Bryant") and Joseph McKittrick "(McKittrick"), regarding leave time and a stipend. See SOUMF ¶ 30-32 and 38. Percella admitted she was aware she could not copy or take these personnel documents that related to other employees. See SOUMF ¶ 45. Percella admitted she accessed, copied and disseminated these documents without the permission of Bryant or anyone else at the City. See SOUMF ¶ 46. The record demonstrates that Bryant informed the City investigator Charles P. Daligan, Esq. ("Daligan") that the personnel documents were kept in

Bryant office in an unlocked cabinet or could have been on her desk in her private office, but she did not give Percella or anyone else permission to take and/or copy the documents. See SOUMF ¶ 49.

Further, the record demonstrates Percella took these documents, in a personal binder, to the City's Police Department, prior to reporting the alleged infractions to the City, to report the alleged improper use of leave time and improper payments. See SOUMF ¶ 26-27. After the Police Department reviewed the documents provided by Percella, the Police Department detectives determined there was no evidence of a crime but there may have been an error in bookkeeping. See SOUMF ¶ 28. Further, in consultation with the Police Department, the City Administration tasked Defendant Waks with conducting the internal investigation regarding Percella's claims. See SOUMF ¶ 29.

The record indicates the City and Defendant Waks hired Daliga to investigate the allegations made by Percella. See SOUMF ¶ 39. During this investigation, Percella, through her attorney Peter Cresci, refused to participate and cooperate with Daligan's investigation into Percella's allegations. See SOUMF ¶ 41-42. In fact, Percella testified that she did not "want to appear and cooperate with the investigation" because she believed her paperwork proved her allegations and it was not important to meet with Daligan because she met with the police department. See SOUMF ¶ 43-44. The record indicates Daligan interviewed Bryant as part of his investigation and she informed Daligan that she was mistakenly paid too much longevity pay but has repaid all of the extra money she received. See SOUMF ¶ 47. Daligan interviewed Defendant Waks, who informed Daligan that he did not receive a check from the City for a $400.00 bonus, as alleged by Percella. See SOUMF ¶ 52. This was supported by the interview of Payroll Department employee Gina Vasquez who informed Daligan that the Health Department provided

the $400.00 bonus for Defendant Waks but once the Payroll Department investigated the bonus, it was determined Defendant Waks was not entitled to the payment and he did not receive the payment. See SOUMF ¶ 54.

The record demonstrates, following the investigation, Daligan found that Bryant did not fraudulent receive extra longevity pay nor did McKittrick receive compensation time for time he was not entitled to use. See SOUMF ¶ 55-56. Daligan found that Waks never received the $400.00 bonus payment. See SOUMF ¶ 57. Finally, in concert with Percella's own testimony, Daligan found Percella improperly took and copied the personnel documents from Bryant's office without her knowledge or consent. See SOUMF ¶ 58. Additionally, he found that Percella admitted to the City of Bayonne Police Department she provided the personnel files to her attorney, Peter Cresci, and he recommended discipline of Percella. See SOUMF ¶ 58.

Following this recommendation and investigation, Percella was served with a Preliminary Notice of Disciplinary Action ("PNDA") seeking her suspension and removal, and such was not signed by Defendant Waks. See SOUMF ¶ 59. At the departmental hearing, only Daligan testified and Percella declined to testify or provide any testimony or evidence to refute Daligan's testimony and findings. See SOUMF ¶ 61-62. A Final Notice of Disciplinary Action was issued suspending Percella for sixty (60) days, which she appealed to the Office of Administrative Law (hereinafter "OAL"). See SOUMF ¶ 65-66. The Administrative Law Judge Walter M. Braswell, after reviewing all the submissions of the parties, affirmed Percella's suspension of sixty (60) days. See SOUMF ¶ 66. Following this decision by the OAL, the New Jersey Civil Service Commission upheld Percella's sixty-day suspension. See SOUMF ¶ 67.

The record demonstrates that a municipal officer under the same circumstances as Defendant Waks reasonably could have believed that his actions of conducting an investigation

and appointing Daligan as the investigating officer did not violate any constitutional rights. Additionally, even if Defendant Waks recommended a suspension of Percella, which there is no evidence to indicate such is true, such recommendation is not a known action of retaliation or a violation of Percella's civil rights under 42 U.S.C. § 1983. Defendant Waks satisfies the second prong of the <u>Saucier</u> test and therefore, he is entitled to qualified immunity from suit for the 42 U.S.C. § 1983 claims.

### III.   PLAINTIFF CANNOT PROVE ANY CLAIM FOR MUNICIPAL LIABILITY AGAINST DEFENDANTS CITY OF BAYONNE BECAUSE PLAINTIFF CANNOT POINT TO ANY POLICY OR CUSTOM THAT CAUSED ANY CONSTITUTIONAL DEPRIVATION ALLEGED BY PLAINTIFF

Plaintiff seeks to hold the City of Bayonne liable for the alleged actions of Defendants Waks. However, without an underlying constitutional violation, Plaintiff has failed to prove that liability can attach to the Defendant City under the <u>Monell</u> standard and, therefore, must be dismissed.

The United States Supreme Court has held that a municipality and other local government units are "among those persons to whom § 1983 applies." <u>Monell v. New York City Dept. Of Social Services</u>, 436 U.S. 658, 690 (1978); <u>See also</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989) . A suit against a municipal policymaking official in his or her official capacity is treated as a suit against the municipality. <u>See</u> <u>A.M. ex rel. J.M.K. v. Lucerne County Juvenile Detention Center</u>, 372 F.3d 572, 580 (3d Cir. 2004). However, "a municipality cannot be held liable under § 1983 on a respondent superior theory." <u>Id.</u> at 691. Rather, "[i]t is only when the 'execution of the government's policy or custom … inflicts the injury' that the municipality may be held liable under § 1983." <u>Id.</u> at 694; <u>See also Springfield v. Kibbe</u>, 480 U.S. 257, 267 (1987).

Generally, proof of a constitutional violation by one or more officers of the municipality is required in order for liability to attach to a municipality. <u>See</u> <u>White v. City of Philadelphia</u>, 328

F.3d 120, 124 (3d Cir. 2003)("There cannot be an 'award of damages against a municipal corporation based on the action of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'")(internal citations omitted). Additionally, where a court finds no violation of a plaintiff's constitutional rights, the court "need not reach the claim against the City under Monell." Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008); See also Mulholland v. Governmental County of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013)(holding"[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").

In addition to showing the existence of an official policy or custom enforced by the municipality, the plaintiff must prove "that the municipal practice was the proximate cause of the injuries suffered." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). In order to establish the required causation, a plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the municipality's "custom and the specific deviation of constitutional rights at issue." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); see also Bielevicz, 915 F.2d at 851 ("[P]laintiffs must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury"); see also Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004)("There must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'")(internal citations omitted). A "sufficiently close causal link between . . . a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." Bielevicz, 915 F.2d at 851; see also

Luzerne County Juvenile Detention Center, 372 F.3d at 582 ("The deficiency of a municipality's training program must be closely related to the plaintiff's ultimate injuries.").

A "policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when; though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Wheeler v. City of Jersey City, No. CV 12-7528, 2016 WL 1029271, at *4 (D.N.J. Mar. 14, 2016) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).

A deliberate choice by a government official constitutes government policy if the official is granted the authority to make final decision concerning the topic at issue. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). In this situation, "municipal liability under § 1983 attaches where, and only where, a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing a final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); see also Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996)(holding "[i]n order to ascertain who is a policymaker, a ' court must determine which official has final, unreviewable discretion to make a decision or take action.'")(internal citations omitted). As with other questions of law, "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).

Further, a municipality may be held liable, in the absence of an official policy, if an official custom causes a constitutional violation. Beck, 89 F.3d at 971. The plaintiff may demonstrate a municipality's custom by "showing that a given course of conduct, although not specifically

endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." Bielevicz, 915 F.2d at 850. A single incident is insufficient to establish a custom, or official policy. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989). However, if a custom can be established, a single application of the custom could be sufficient to establish that the alleged constitutional violation was undertaken pursuant to official policy or custom, then the municipality may be subjected to liability. Ibid. A plaintiff may present evidence of a pattern of similar incidents and inadequate responses to those incidents in order to demonstrate a municipal custom. Beck, 89 F.3d at 972. Additionally, the plaintiff must provide evidence that a policymaking official knew of the custom and permitted the custom to exist. See B.S. v. Somerset County, 704 F.3d 250, 275 n. 36 (3d Cir. 2013); see also Andrews, 895 F.2d at 1480 (The Court noted that in order to establish municipal liability the plaintiff must demonstrate "that a policymaker is responsible either for the policy or, through acquiescence, for the custom."); see also Baker v. Monroe Township, 50 F.3d 1186, 1191 (3d Cir. 1995)(A plaintiff "must show that a policymaker for the Township authorized policies that led to the violation or permitted practices that were so permanent and well settled as to establish acquiescence.").

However, where the custom does not, in and of itself, rise to the level of a constitutional violation, but rather is alleged to have led to a constitutional violation, the plaintiff must establish deliberate indifference under City of Canton, Ohio v. Harris, 489 U.S. 378 (1989); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). In Berg, the Third Circuit Could focused on whether the municipal policymakers had actual or constructive knowledge of the custom at issue, the practice of issuing warrants. Id. at 276. Further, the Berg Court found that if the policy or custom "does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known

or obvious consequences.'" Ibid. The deliberate indifference standard for municipal liability is often applied in cases where the allegations involve the failure of the municipality to adequately train, supervise or screen its employees. Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998).

In order for a plaintiff to succeed on a claim of failure to train under § 1983 that amount to a deliberate indifference by the municipality, a plaintiff must "(1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality." Wheeler, 2016 WL 1029271, at *4 (citing Lapella v. City of Atl. City, No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012)). A plaintiff may not establish a failure to train claim by: "(1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; and (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." Id. (citing Simmons v. City of Phila., 947 F.2d 1042, 1060 (3d Cir. 1991)). The plaintiff must show that the need for more training was so obvious and so likely to lead to a constitutional violation that the failure to respond amounts to deliberate indifference. Id.

Foremost, as an initial matter, the Section 1983 claims against the Bayonne Defendants must be dismissed because Plaintiff has failed to establish the existence of an underlying constitutional violation. Panarello v. City of Vinland, 160 F. Supp. 3d 734, 763 (D.N.J. 2016), (citing Monell, 436 U.S. at 690-91). "[I]f there is no violation in the first place, there can be no derivative municipal claim." Id., citing Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238 n. 15 (3d Cir. 2013). As explained in the preceding and subsequent sections, Percella has provided no evidence of a constitutional violation of her First Amendment rights under § 1983 due to the

actions of Defendant Waks. Percella has failed to provide any evidence of how Defendant Waks violated her constitutional rights, as alleged in the Amended Complaint, when Percella, admittedly, improperly entered the office of Bryant, copied, possessed, and disseminated the confidential personnel files of Bryant, McKittrick, and Defendant Waks to her attorney Peter Cresci and the Bayonne Police Department. See SOUMF ¶¶ 26-68. Further, Defendant Waks did not complete the investigation but an independent third-party investigator, Daligan, was hired by the Defendant City to investigate the claims made by Percella. Id. at ¶ 39. Finally, Percella has provided no evidence that any investigation conducted by Daligan was deficient, especially in light of the fact that Percella refused to speak with Daligan and did not provide him testimony regarding her allegations. Id. ¶¶ 41-44. Therefore, Percella has failed to produce any evidence of an underlying constitutional violation for Percella's complaints of improper use of sick time and a $400.00 stipend for Defendant Waks nor any evidence to support a claim of a deficient investigation. As such, the Defendant City is entitled to qualified immunity and the Court need not find a derivative municipal claim. Panarello, 160 F. Supp. 3d at 763; Mulholland, 706 F.3d at 238 n. 15.

Notwithstanding, evening assuming *arguendo* that there was an underlying constitutional violation, which there is not, Plaintiff cannot establish a claim for municipal liability under Section 1983. Plaintiff has not produced a shred of evidence that the City of Bayonne has a policy or custom that caused the alleged constitutional violation. Plaintiff has failed to show that the City of Bayonne has failed to train or supervise its municipal officers or employees and that such failure caused the alleged constitutional violations allegedly suffered by Percella. As discussed above, an investigation was conducted regarding Percella's alleged discovery of a misuse of compensation time and a $400.00 payment and as part of that, the City requested an investigation of how Percella obtained these documents, which she admitted, was improper. See SOUMF ¶¶ 26-68. Further, as

discussed below, all complaints by Percella was formally investigated by the City, whether made by Percella or against Percella.

Therefore, Percella has produced no evidence to support a claim of liability against the Defendant City for a violation of Percella's First Amendment rights pursuant to § 1983. All such claims should be dismissed.

## IV.   PERCELLA HAS FAILED TO STATE A CLAIM FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT UNDER § 1983 OR THE NEW JERSEY LAW AGAINST DISCRIMINATION

Assuming *arguendo* Defendants are not entitled to Qualified Immunity, Plaintiff has failed to proffer any evidence to support her claim of retaliation under the First Amendment. In order for a plaintiff to establish a claim of First Amendment retaliation under 42 U.S.C. § 1983, as alleged by Percella, a plaintiff must demonstrate that she was "(1) engaging in a constitutionally protected activity; (2) suffered an adverse employment action sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights; (3) having the protected activity be a substantial motivating factor in the state actor's decision to take the adverse action." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).[1] A defendant "may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." Lauren W. ex rel. Jean W. v. DeFiaminis, 480 F.3d 259, 267 (3d Cir. 2007).

---

[1] In order for a plaintiff to survive a motion for summary judgment related to retaliation under the LAD, a plaintiff must demonstrate that (1) the employee engaged in a protected activity known to the defendant; (2) the employee was thereafter subjected to an adverse employment decision; and (3) there was a causal link between the two. Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 548 (1995). If a plaintiff establishes a prima facie case of retaliation under the LAD, a defendant must articulate a legitimate non-discriminatory reason for the decision. Ibid. The plaintiff must then rebut with evidence that the legitimate non-discriminatory reason proffered by the defendant was merely a pretext for the underlying discriminatory motive. Ibid.

Under the first element, speech is protected if it implicates a matter of public concern. Hill v. Borough of Kutztown, 455 F. 3d 225, 241 (3d Cir. 2006). "Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." Miller v. Clinton Cnty., 544 F.3d 542, 548 (3d Cir. 2008). The content of the speech "may involve a matter of public concern if it attempt to bring to light actual or potential wrongdoing or a breach of public trust on the part of government officials." Baldassare v. State of N.J., 250 F.3d 188, 195 (3d Cir. 2001)(internal citations omitted). Whether the activity in question is protected by the First Amendment is a matter of law to be determined by the judge prior to trial. Emigh v. Steffee, 442 F. App'x 660, 665 (3d Cir. 2011).

Regarding the second element, the Third Circuit has held, that "[d]etermjne whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speak, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)(internal citations omitted). A public employer "adversely affects an employee's First Amendment rights when it refuses to hire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." Ibid.  The standard for an adverse employment action is not limited to conduct impacting the terms and conditions of employment, but includes any action that would have "dissuaded a reasonable workers from making or supporting a charge of discrimination." Davis v. City of Newark, 285 F. App'x 899, 904 (3d Cir. 2008). "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence," retaliation is only actionable where it produces material injury or harm to deter

opposition to or reporting of discriminatory employment practices. <u>Burlington N 7 Santa Fe Ry.</u> <u>Co v. White</u>, 548 U.S. 53, 68 (2006).

In order to satisfy the third element, a plaintiff must prove that his protected activity was "a substantial motivating factor" in the retaliatory action. <u>Hill</u>, 455 F.3d at 243. The plaintiff must prove that the decision was motivated in part by protected conduct before the burden shifts to the defendant to prove a lack of but-for causation. <u>Suppan v. Dadonna</u>, 203 F.3d 228, 236 (3d Cir. 2000). Causation means either: "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." <u>Lauren W.</u>, 480 F.3d at 267. However, "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. <u>Ibid.</u>

Percella has alleged that the Defendant City retaliated against her because she "filed several complaints to City of Bayonne regarding the harassing treatment and each time a complaint was made, Plaintiff was retaliated against[.]" <u>See</u> Certification of T. Lentini, Exhibit B, ¶ 13. Percella cannot demonstrate that any of her complaints caused her to suffer an adverse employment action as defined under the statutes and case law.

A.   <u>**Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For the November 2009 31-A**</u>

Here, as mentioned above, these allegations are barred by the applicable statute of limitations. However, assuming *arguendo*, Percella may continue with this claim, Percella was not engaging in a constitutionally protected activity when she was served with a 31-A in November 2009 for incompetency; inefficiency or failure to perform duties; conduct unbecoming a public

employee; neglect of duty; and other sufficient cause. See SOUMF ¶ 11. Specifically, Percella was charged with notarizing an official City document during the course of her employment as the Deputy Registrar and certifying under oath that a father of a child personally executed the document, even though the father did not appear before Percella to execute the document. Id. ¶ 12. Percella has provided no evidence that engaging in falsifying a City document is a constitutionally protected activity.

Additionally, the City's decision to discipline Percella was not based on Percella's exercise of any protected First Amendment rights. See Brennan, 350 F.3d at 419. As previously mentioned, falsifying a public document is not an exercise of a constitutional right protected by the First Amendment. Additionally, the City conducted an investigation and spoke with the father at issue. See SOUMF ¶ 15. Specifically, the father informed the City's investigator that he was only in Bayonne one time, before moving out of the state of New Jersey, and signed the birth certificate but was later informed there was an error with the birth certificate. Id. at ¶ 16. Further, he informed the investigator that his brother signed the birth certificate on his behalf. Ibid. Percella's attorney, Peter Cresci, informed Assistant City Attorney Donna Russo that Percella waived her request for a formal hearing and Percella was suspended for two days. Id. ¶ 18.

Finally, Percella was not engaging in a constitutionally protected activity so such was not a substantial motivating factor to discipline her for allowing an individual, who was not the father to sign a birth certificate on behalf of the father. The only evidence provided by Percella that the November 2009 31-A was retaliatory is because she believed the Acting Director of the Health Department, Peggy Lanni, was retaliating against Percella for refusing to issue a hot dog vendor license, at some unspecified time, to a vendor without a health official present. Id. ¶ 20. However, Percella admitted that she did not have any facts or evidence to support this bald assertion. Id. ¶

21. She further testified that in 2011, after this birth certificate incident and discipline, the Registrar's office was transferred to the City Clerk's Office, but she remained in the Health Department. Id. at ¶ 22. However, even after the move of the Registrar's Office, Percella "still gave out the health licenses and the cats and dogs and took in all the health complaints." Id. ¶ 23. As such, although the Registrar's Office allegedly moved, Percella still retained her title and her job duties. Ibid.

Therefore, Percella did not engage in a constitutionally protected activity and suffered no retaliation under 42 U.S.C. § 1983.

**B.** **Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For Her Sexual Harassment Complaint Against Defendant Censullo**

Here, as mentioned above, these allegations are barred by the applicable statute of limitations. Moreover, Plaintiff has failed to allege such a claim in her Amended Complaint. However, assuming *arguendo*, Percella may continue with this claim, the Defendants do not dispute that Percella's October 6, 2010 filing of a sexual harassment complaint to the City's Assistant Attorney Donna Russo is a protected activity. See SOUMF ¶ 69. Percella submitted a letter to Russo explaining that Steve Gallo, Terrence Malloy, and Defendant Waks met with Percella to inform her she was being transferred to the Tax Assessors Office to separate Percella and Censullo due to her allegations. Id. at ¶ 70. As such, Percella filed a workplace retaliation complaint after she was transferred from the Health Department to the Tax Assessors Office. Id. at ¶85.  At the time, Percella informed Russo she believed she was being punished for filing the sexual harassment complaint. Ibid.

However, Plaintiff did not suffer an adverse employment action due to her sexual harassment complaint against Defendant Censullo. Percella testified that when she was transferred

to the Tax Department her compensation did not change. Id. at ¶ 96. Percella acknowledged to Donna Russo that Percella, prior to the allegations against Censullo, requested a transfer from the Health Department. Id. at ¶¶ 86-87. Censullo testified that Steve Gallo informed Censullo that Percella had requested a transfer from the Health Department. Id. at ¶ 95. Courts have repeatedly declined to find adverse action where the "alleged retaliatory acts were criticism, false accusations or verbal reprimands." Brennan, 350 F. 3d at 419 (declining to find that the following allegations or retaliations, purportedly done after the plaintiff complained about practices in the fire department, were actionable in a First Amendment retaliation claim: transfer out of headquarters, threatening to make the plaintiff's life miserable, assigning plaintiff to ten-hour watch duties, telling others that the plaintiff was on medication that causes psychotic behavior, refusing to use the plaintiff's title or capitalize his name, requiring plaintiff to perform menial tasks, citing the plaintiff for "conduct unbecoming charges," and subjecting the plaintiff to daily hostilities after he filed a complaint, including derogatory remarks).[2]

Therefore, as in Brennan, Percella has failed to proffer any evidence that her transfer was sufficient to deter a person of ordinary firmness from exercising her constitutional rights. Especially, because the City and Defendant Waks explained to Percella that she was being

---

[2] See also Revell v. City of Jersey City, 394 F. App'x 903, 905 (3d Cir. 2010)(finding that none of the plaintiff's allegations of retaliation, purportedly done in response to a letter writing campaign by the plaintiff, rose to the level of retaliatory harassment, the plaintiff made allegations that the defendants threatened the plaintiff's brothers, told plaintiff to stop letters, required her to undergo random drug test, required her to furnish a report examining her one-day absence, called her a "bad catalyst" and "half a cop," and transferred her from the property room to patrol duty which did not affect the cut in rank, pay or hours); Bradshaw v. Twp. of Middletown, 296 F. Supp. 2d 526, 542 (D.N.J. Dec. 4, 2003)(public disagreement in the press with plaintiff was insufficient to deter a person or ordinary firmness from exercising his First Amendment Rights); and Johnson v. Heimbach, No. Civ. A 03-2483, 2003 WL 22838476 at * 6 (E.D. Pa. Nov. 25, 2003), aff'd, 145 F. App'x 763 (3d Cir. 2005)(evaluations containing false perceptions, derogatory written comments, inadequately grounded conclusions of job effectiveness, and unkind words from colleagues would not deter a person of ordinary firmness from exercising First amendment rights).

transferred from the Health Department so she would not have to face the man she is accusing of sexual harassment and pursuant to her transfer request. As such, she did not suffer retaliation under the First Amendment pursuant to § 1983.

C.   **Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For the February 2011 31-A**

Here, as mentioned above, these allegations are barred by the applicable statute of limitations. However, assuming *arguendo*, Percella may continue with this claim, Percella has failed to establish that she suffered any retaliation under 42 U.S.C. § 1983 for any action that occurred pursuant to the February 2011 31-A. As the outset, the February 2011 31-A is approximately 15 months after the November 2009 31-A and is thus not temporally proximate. Prior to this incident, the Registrar for the City, McKittrick, informed the Director of Municipal Services Jason O'Donnell that he [McKittrick] believed was suffering from a hostile work environment due to the actions of the Deputy Registrar, Percella. See SOUMF ¶ 24.

On February 18, 2011, Percella was served with a 31-A seeking her suspension and removal due to Percella improperly obtaining the confidential personnel records and information of Vanessa Bryant (hereinafter "Bryant"), Registrar Michael McKittrick ("hereinafter McKittrick") and Defendant Waks. Id. ¶ 59. Assuming *arguendo* that improperly obtaining confidential personnel files of public employees by public employees is a constitutionally protected activity, then Percella has satisfied the first requirement for a First Amendment retaliation claim under § 1983. However, Defendants strongly opposed such a finding of a constitutionally protected activity. Percella admitted that she entered Bryant's office and copied confidential personnel files, without Bryant's permission, and provided a personal binder of 274 copied pages to the police department for review and to her attorney, Peter Cresci, accusing Bryant

and McKittrick of improperly using compensation time and Waks of receiving a $400.00 stipend. Id. ¶¶ 26-32; 50.

Percella has supplied no evidence that her discipline would be sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights. In fact, based on Percella's findings, the City hired Daligan to investigate the allegations made by Percella and determine how Percella obtained the confidential personnel files. Id. ¶¶ 39-40. During the investigation, Percella, thorough her attorney Peter Cresci, refused to meet with Daligan for the investigation and would only answer written questions. Id. ¶ 41-42. Daligan informed Peter Cresci that he must interview Percella in person to judge her credibility and would continue his investigation without her testimony. Ibid. Percella justified her reason to not meet with Daligan by stating she did not "want to appear and cooperate with the investigation" and that meeting with Daligan was unimportant because she met with the City's police department. Id. at ¶¶ 43-44. Percella admitted that she was aware she was not permitted to copy the confidential personnel documents of other employees and that she did such without the permission of Bryant, whose office retained the personnel files. Id. ¶¶ 45-46. Percella suffered discipline due to her actions because Daligan found that, although he did not have the opportunity to interview Percella, she improperly took possession of the confidential personnel files from Bryant's office without her permission and provided these confidential documents to the police department and to her attorney, Peter Cresci. Id. ¶ 58.

Daligan's investigative report found Bryant and McKittrick did not improperly use compensation time and Defendant Waks did not improperly receive a $400.00 stipend. Id. ¶¶ 47-57. Based on Daligan's investigative report, Daligan recommended Percella should be charged for improperly obtaining the confidential personnel files and as such, Percella received a 31-A and DeSalvo was appointed as the City's hearing officer. Id. ¶¶ 58-60. In DeSalvo's report he

documented that at the disciplinary hearing the only evidence introduced was Daligan's investigative report and the only witness to testify was Daligan. Id. ¶ 61. Percella refused to testify and did not provide any evidence to rebut Daligan's report. Id. ¶ 62. Based on this hearing, DeSalvo recommended the charges against Percella be sustained and concurred with her suspension of sixty days. Id. ¶ 63. Following this determination, on appeal, the New Jersey Office of Administrative Law and New Jersey Civil Service Commission upheld and affirmed the suspension of Percella. Id. ¶¶ 67-68.

As stated, Percella has provided no evidence that the suspension of Percella for improperly entering another co-worker's office, copying, possessing and disseminating confidential personnel files was a constitutionally protected activity or would be sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights. Additionally, Percella has provided no evidence that her reporting of alleged abuse of compensation time was a substantial motivating factor in her discipline. In support of this, the only evidence proffered by Percella is that it is her belief her sixty-day suspension was in retaliation from "the administration, Joe Waks, Steve Gallo" and Charles D'Amico for the sole reason that she had "made complaints." Id. ¶ 68. The action taken by the City was appropriate to prevent other employees from accessing and disseminating the confidential personnel files of other employees. See. Lauren W, 480 F.3d at 267.

Therefore, Percella suffered no First Amendment retaliation under § 1983 for these incidents.

### D.   Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For the June 2013 Discipline of Percella

Percella did not engage in an act of constitutionally protected activity when she was charged with "during work hours and while on City property" calling Charles D'Amico, the City's

Corporation Counsel, a "disgrace" two times, so third parties could hear. See SOUMF ¶ 103. Percella has proffered no evidence to support a claim that calling the City's corporation counsel a "disgrace" is a matter of public concern. The only evidence proffered by Percella is that her Notice of Minor Disciplinary Action was retaliatory because she filed complaints. Id. at ¶ 105.

As such, Percella has failed to meet the required framework to establish she suffered retaliation under the First Amendment pursuant to § 1983.

### E. Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For The Incidents Occurring on July 8, 2013 and July 9, 2013

Percella has failed to proffer any evidence that she was engaging in a protected activity when she spoke to a concerned resident of the City regarding a hazardous tree condition on the resident's property and Percella informed the resident that Public Service Gas and Electric (hereinafter "PSE&G") cut the trees causing the reported hazardous condition. Id. SOUMF at ¶ 107. Moreover, Percella testified she did not follow proper protocol because generally she would send a DPW worker to check a hazardous condition, but she did not do so on this occasion because it was 4:30 p.m. when she received the call and PSE&G had cut the trees. Id. at ¶ 108. Further, on July 9, 2013, Percella spoke with the same concerned resident and testified she blamed the actions on PSE&G and informed the resident that the City's Mayor, Mayor Smith, would cause DPW workers to work on other jobs, delaying the City's tree trimming operations. Id. at ¶¶ 109-110. Percella has failed to put forward any evidence supporting that her failure to notify DPW workers of a hazardous condition on a resident's property and criticizing PSE&G and Mayor Smith was a constitutionally protected activity.

Following these two exchanges with the resident, Percella was served with a Preliminary Notice of Disciplinary Action, 31- A, on July 12, 2013 (hereinafter "July 2013 31-A") for conduct

unbecoming; incompetency; inefficiency or failure to perform duties; neglect of duty; and other sufficient cause and the City sought a sixty day suspension. Id. at ¶ 111. Percella was accused, and later the charges were sustained, of responding to the resident in a "rude and harsh tone" and provided the resident with misinformation. Id. at ¶ 112.

Since Percella was not participating in a constitutionally protected activity when speaking to the resident, Percella has failed to establish her suspension would be sufficient to deter a person of ordinary firmness from engaging in a constitutionally protected activity. Moreover, there was no protected activity that was a substantial motivating factor in her suspension. Percella admitted that she was obligated to send a DPW workers to investigate a hazardous condition when such is reported but that she did not do so because "we all knew Public Service was cutting the trees and making them look ugly." Id. at ¶¶ 125-126.

The only evidence preferred by Percella to support her claim of retaliation is that she believes she was transferred to the Department of Public Works (hereinafter "DPW") in 2013 in retaliation, but she has not preferred any reason or evidence to support this bald assertion. See SOUMF at ¶ 106. Therefore, Percella was not engaging in a constitutional protected activity and has proffered no evidence that she suffered retaliation under the First Amendment pursuant to § 1983.

**F.**     **Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For the September 2013 Incident with Defendant Waks**

Here, Percella was not engaged in a constitutional protected activity and did not suffer an adverse employment action, so this incident does not rise to the level of retaliation under the First Amendment. On September 17, 2013, Percella submitted a letter to Russo alleging she was in the Health Department for a business mater but at the conclusion of the business mater she spoke with

Laura Kline (hereinafter "Kline") and Beth Styles (hereinafter "Styles") about non-business-related matters. <u>See</u> SOUMF at ¶ 132. Percella alleged that Defendant Waks walked through the Health Department and came back approximately five minutes later and told Percella to "get the fuck out" to which Percella responded that Defendant Waks "Cannot tell me I can't be in here, these are my co-workers." <u>Ibid.</u>

In response, Russo initiated an investigation and interviewed Percella, Defendant Waks, Thomas Keyes (hereinafter "Keyes"), Kline and Styles regarding the incident between Percella and Defendant Waks. <u>Id.</u> at ¶ 139. In her investigation, Kline, Styles, Keyes, and Percella stated Percella came to the Health Department for a business-related matter but after that was completed Percella sat near Styles and Kline to discuss personal matters. <u>Id.</u> at ¶¶ 140-144. In here interview with Russo, Percella did not state that Defendant Waks profanity caused her any concern or that she felt pressured or intimidated by his actions. <u>Id.</u> at ¶ 143. Percella stated to Russo that she believed Defendant Waks was retaliating against her for the overcompensation issue from 2010, three years prior to this incident. <u>Id.</u> at ¶ 143. However, Waks believed Percella was retaliating against him for effectuating at transfer of Percella to DPW and testifying against her in a departmental hearing. <u>Id.</u> at ¶ 145.  Russo concluded that no harassment occurred but that Defendant Waks must undergo anger management counseling. <u>Id.</u> at ¶ 146.

As such, Percella was not engaged in a constitutional protected activity when she was speaking with Styles and Kline about personal matters. Percella's personal matters are not a matter of public concern rising to the level of a constitutional protected activity. <u>See</u> <u>Miller</u>, 544 F.3d at 548. Additionally, Defendant Waks unprofessionalism and lack of good manners does not rise to the level of deterring a person of ordinary firmness from exercising constitutional rights. <u>See</u>

Burlington N 7 Santa Fe Ry. Co, 548 U.S. at 68. Finally, Percella did not suffer an adverse employment action.

Therefore, Percella has failed to establish this incident rises to the level of retaliation under the First Amendment.

**G.**    **Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For The Pencil Incident Between Defendant Waks and Percella**

Percella testified that Simon Stergion (hereinafter "Stergion"), Lisa Menendez (hereinafter "Menendez"), the City's Animal Control Officer, and Percella were discussing an ordinance related to feeding cats in the City. See SOUMF ¶ 157. Percella testified that a disagreement between Waks and Stergion ensued over a memorandum Waks drafted which allowed for the feeding of stray cats. Ibid. Percella alleges she told Defendant Waks to not speak to Stergion in that tone and Defendant Waks cursed at Percella. Ibid. Percella alleged Waks threw a pencil in anger which hit a wall. Ibid. Percella testified that Defendant Waks did not throw the pencil at her but that it hit a wall and ricocheted near her. Id. at ¶ 159. Percella testified that she did not file a complaint to the City. Id. at ¶ 158.

Although Waks actions are unprofessional, in this instance, Percella was not engaged in any constitutionally protected activity nor did she suffer any adverse employment action. Therefore, Percella did not suffer any retaliation under the First Amendment.

**H.**    **Percella Has Failed To Establish the Defendant City Retaliated Against Her In Violation Of Her First Amendment Rights Under § 1983 For The Magnet Incident With Defendant Waks**

At some unknown time, Percella testified that Defendant Waks created a magnet of three women in lingerie with the top of the magnet stating, "Girls from Bayonne" and bottom saying "Leave 'em alone." See SOUMF ¶¶ 164-165. Percella testified that she found the magnet to be

offensive because she believed it meant girls from Bayonne were "trash" or "sluts". Id. at ¶¶ 163 and 167. Percella testified that she took the magnet down when she found it near her office and did not file a complaint or notify her supervisor. Id. at ¶¶ 178-179. Percella testified that she did not see Waks place the magnet in any location in the office. Id. at ¶ 174.

Percella did not engage in a constitutionally protected activity nor did she suffer an adverse employment action for taking down the magnets. Therefore, Percella did not suffer any retaliation under the First Amendment.

As such, Percella has failed to establish any claims she has made, whether in her Amended Complaint or in discovery, rise to the level of a § 1983 violation.

## V. PERCELLA HAS FAILED TO ESTABLISH A CLAIM OF DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND HARASSMENT AGAINST DEFENDANT CITY

In Plaintiff's Amended Complaint, Plaintiff alleges the Defendant City and Defendant Waks engaged in discrimination and harassment of Percella due to her gender for the aforementioned magnet posted by Defendant Waks stating "Girls from Bayonne Leave 'em Alone." See Certification of T. Lentini, Exhibit B at ¶¶ 21-25. In her Amended Complaint, Percella does not allege any sexual harassment claims against Defendant Censullo. Id. However, such was addressed by Percella in her deposition, so this brief will address her allegations of sexual harassment against Defendant Censullo. Finally, in her Amended Complaint, Plaintiff alleges a hostile work environment due to the actions of Defendant Waks yelling "fuck you," slamming doors, and portraying women in a demeaning fashion. Id. at ¶¶ 26-33. Due to the elements and facts being intertwined, the Defendants will address all of these allegations within this section.

New Jersey  have consistently held that a plaintiff bears the burden to establish a prima facie case demonstrating he or she was the victim of discrimination by an employer. Victor v.

State, 203 N.J. 383, 408 (2010). Typically, a prima facie case of employment discrimination based on sex is established when a plaintiff demonstrates, by a preponderance of the evidence, that he or she "(1) is a member of a designated protected class; (2) who was qualified for and performing the essential functions of the job; but (3) suffered termination or other adverse employment action; and (4) others not in the protected class did not suffer similar adverse employment actions." Schiavo v. Marina Dist. Development Co, LLC, 442 N.J. Super. 346, 357-58 (App. Div. 2015)(citing Victor, 203 N.J. at 149).

In order to state a claim of hostile work environment sexual harassment, a "female plaintiff [must] allege conduct that occurred because of her sex and that a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile or offensive working environment." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993). Specifically, the New Jersey Supreme Court articulated a framework of the elements that must be demonstrated by a plaintiff claiming a violation of the LAD based on a hostile work environment. The plaintiff must show that (1) the conduct complaint of would not have occurred but for the employee's protected status; (2) the conduct was severe or pervasive enough to make a (3) reasonable person of the same protected class believe that (4) the conditions of employment and the working environment had been altered and the working environment has become hostile or abusive. Ibid.

A single act of discrimination or offensive conduct could, under certain circumstances, create a hostile work environment. Lehmann, 132 N.J. at 606-07. However, such a case would be a "rare and extreme case in which a single incident so severe that it would, from the perspective of a reasonable woman, make the working environment hostile, . . . ." Ibid. Offensive, crude or inappropriate comments are not automatically discriminatory because the words are tinged with

racial stereotypes or sexual connotations. Reyes v. McDonalds Pontiac-GMC Truck, Inc., 997 F.Supp. 614, 617 (D.N.J. 1998)(references to plaintiff as a "bitch" and "Queen Bee" were not actionable). It is the harassing conduct that must be severe or pervasive, not its effect. Lehmann, 132 N.J. at 606. Simple teasing, offhand comments and isolated incidents do not meet the bar for severe or pervasive. Hargrave 262 F.Supp.2d at 413.

In order to state a claim under the LAD for sex and/or gender discrimination, a plaintiff must demonstrate by a preponderance of the evidence that the plaintiff suffered discrimination because of her sex or gender. Lehmann, 132 N.J. at 604. "Common sense dictates that there is no LAD violation if the same conduct would have occurred regardless of the plaintiff's [gender or sex]." Ibid. What "is required is a showing that [plaintiff's] gender was a substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner." Hargrave, 262 F.Supp.2d at 412. If the party who committed the allegedly discriminatory act is equally crude to all employees there is no basis for a LAD claim. Lehmann, 132 N.J. at 604; Boyce v. New York City Mission Society, 963 F.Supp. 290 (S.D.N.Y. 1997)(yelling, cursing belittling of plaintiff's doctoral degree, assigning secretarial duties, indicating she was not liked and pounding on office door were unrelated to gender). If incidents are not obviously based on the victim's sex, the plaintiff must make a prima facie showing that harassment was because of the victim's sex. Lehmann, 132 N.J. at 605. A plaintiff must meet this burden by demonstrating that a facially non-sexual conduct was accompanied by harassment that was obviously sex based. Ibid.

A plaintiff must demonstrate that a reasonable woman would believe that the conditions of her employment have been altered. Baliko v. Inter'l Union of Operating Eng'rs, 322 N.J. Super. 261, 277-78 (App. Div. 1995). A plaintiff may satisfy her burden via evidence that other women in the workplace have been harassed. Lehmann, 132 N.J. at 610. In determining whether plaintiff

has adduced evidence sufficient to establish an objectively hostile or abusive work environment, the court must examine the "totality of the circumstances," such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Hargrave v. County of Atlantic, 262 F.Supp.2d 393, 413 (D.N.J. 2003).

## A.   Percella Has Failed To Establish A Prima Facie Case of Sex Discrimination by Defendant City Due To The Actions of Defendant Waks

In Plaintiff's Amended Complaint, Plaintiff alleges the Defendant City and Defendant Waks engaged in discrimination and harassment of Percella due to her gender because of the magnet stating, "Girls from Bayonne Leave 'em Alone." See Certification of T. Lentini, Exhibit B at ¶¶ 21-25. Defendant City concedes that Plaintiff is a woman, which is a protected class under the LAD. However, Plaintiff has failed to meet her prima facie burden of proving a violation of her constitutional protected rights due to sex discrimination by Defendant Waks due to the magnet.

Percella has failed to provide any evidence that she was qualified for and performing the essential functions of her position when she found the magnet that was created by Defendant Waks. However, most importantly, Percella has failed to proffer any evidence she suffered an adverse employment action due to the placement of the magnet or her removal of the magnet.

Percella testified that at some unknown time she saw the magnet in front of her desk on a filing cabinet while she was working in the Health Department. See SOUMF at ¶ 165. The magnet depicts three women in lingerie with "Poland", "Italia" and "Ireland" over each respective woman's head. Id. at ¶ 164; see also Certification of T. Lentini, Exhibit BB. The top of the magnet says, "Girls from Bayonne" and the bottom of the magnet says "Leave 'em alone." Ibid. Percella testified that she found the magnet offensive because she believed the saying referred to woman from Bayonne as "trash" or "sluts" and that it is a common saying in Bayonne but admitted that

Defendant Waks is not from Bayonne. Id. at ¶¶ 167-168. Percella testified that she immediately took down the magnet when she saw it on the filing cabinet and admitted no other employees complained about the magnet. Id. at ¶¶ 169-170. Percella further testified that she did not witness Defendant Waks place the magnet in any location in the Health Department and admitted she did not know who placed the magnet on the filing cabinet. Id. at ¶ 166.

Defendant Waks testified that he recalled the magnet being present on the cabinet in his office and on the door of co-worker Michelle O'Reilly's (hereinafter "O'Reilly") office because she had requested a magnet from Defendant Waks. Id. at ¶ 172. Defendant Waks testified his wife made the magnet as part of a giveaway at one of Defendant Waks' art exhibits. Id. at ¶ 174. Finally, Waks testified that he only gave the magnet to O'Reilly and did not place it on anyone's desk and had no knowledge of such. Id. at ¶ 175.

Admittedly, Percella did not file a complaint to the Defendant City or advise any supervisor, including Defendant Waks, of the magnet and her belief it was offensive. Id. at ¶¶ 171 and 176. Percella has failed to establish any evidence that she suffered an adverse employment action due to removing the magnets or due to the existence of the magnet. As stated above, she removed them and no other employees complained, Defendant Waks was unaware of the placement of the magnet on the filing cabinet, and Percella did not file a complaint with the Defendant City. Further, Defendant Waks did not even know about Percella's issue with the magnet until Percella filed this lawsuit. Id. at ¶ 176.

Therefore, since Percella has not established a prima facie case, namely providing any evidence that she suffered an adverse employment action due to the removal of the magnet or the existence of the magnet. Percella has failed to establish a claim of sex discrimination as alleged in her Amended Complaint. As such, this claim should be dismissed.

**B.      Percella Has Failed To Establish A Prima Facie Case of Hostile Work Environment Sexual Harassment Against The Defendant City**

In her Amended Complaint, Percella alleges she was subjected to a hostile work environment due to Defendant Waks yelling "Fuck, Fuck, Fuck You!", slamming doors, and portraying women in a demeaning fashion. See Certification of T. Lentini, Exhibit B ¶ 27. Percella has produced no evidence in the record to demonstrate that any of these actions occurred as alleged or that such allegations rise to the level of a hostile work environment claim that can survive a motion for summary judgment.

When assessing the harassing conduct itself, not its effect on the plaintiff, there is no support that the actions taken by Defendant Waks rise to the level of a sexual harassment hostile work environment claim. See Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008). Percella alleged interactions with Defendant Waks occurred over a period of three years and are limited to Percella accusing Defendant Waks of improperly receiving a $400.00 stipend, which was unsubstantiated; Percella refusing to leave the Health Department while speaking with Kline and Styles about personal matters and Waks cursing at Percella, which was investigated and Waks was referred to anger management; and one issue Percella did not file a complaint to the City, the pencil throwing incident.

Percella testified, although not alleged in her Amended Complaint, that during a heated argument between Stergion and Defendant Waks about feeding stray cats in the Defendant City, Defendants Waks cursed at Percella and threw a pencil at a wall. See SOUMF ¶ 157. However, Percella has provided no evidence that the throwing of the pencil was directed at her because she is a woman or that such conduct was severe or pervasive to alter the working conditions. Id. at ¶159. In fact, Percella did not even file a complaint with the Defendant City about the issue and all parties went to lunch, including Percella, after the incident. Id. at ¶¶ 158 and 162. Thus, there

can be no finding of a severe and pervasive work environment or that any alleged actions between Waks and Stergion occurred because of Percella's sex.

Percella alleges Defendant Waks told her to "Get the Fuck Out Of My Office[,]" when Percella was in the Health Department for approximately ten minutes speaking with Styles and Kline about personal matters. See SOUMF at ¶ 140. However, Waks testified that he had previously implemented a rule in the Health Department limiting communications with employees regarding personal matters. Id. at ¶ 135. Further, Percella testified that she believed such was a reasonable policy to limit the amount of time an employee may visit other employees for personal matters. Id. at ¶ 137. However, Percella then testified and contradicted herself that she did not believe it was a reasonable policy. Id. at ¶ 138. Based upon Percella's complaint about Defendant Waks actions, an investigation was conducted by the Defendant City and Russo interviewed Keyes, Styles, Kline, Waks, and Percella about the incident. Id. at ¶¶ 139-146. As a result, of the investigation, Percella admitted she was not upset by the use of profanity but found such to be unprofessional. Id. at ¶ 146. Further, Russo recommended Defendant Waks undergo counseling, which he completed, and the therapist submitted a letter of completion to the Defendant City. Id. at ¶ 146-147.

Although Percella found the utterance of the word "Fuck" by Defendant Waks unprofessional, a finding that is not disputed, a mere utterance of this word which engenders offensive feelings does not sufficiently affect the terms and conditions of employment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Further, Percella has provided no evidence that Defendant Waks cursing at her was due to her gender. This conduct by Defendant Waks is not so extreme as to cause a change in the terms and conditions of employment. See. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)(The "standards for judging hostility are sufficiently

demanding to ensure that Title VII does not become a general civility code."); see also Shepherd v. Hunterdon Dev. Corp., 174 N.J. 1, 18-19 (2002)(enumerating the same factors for NJLAD claims).

Ignoring the lack of evidence provided by Percella to support her claims, the actions of Defendant Waks were unprofessional but fall into the category of "off-hand comments, and isolated incidents" that were not due to Plaintiff's gender and do not rise to the level of severe or pervasive enough to alter the terms and conditions of employment. Faragher, 524 U.S. at 788. Therefore, this claim against the Defendant City should be dismissed.

This same analysis should be applied to Percella's claims, although no such claim is alleged in her Amended Complaint, of sexual harassment by Defendant Censullo. On October 6, 2010 Percella submitted a letter to Russo stating that Defendant Censullo stated to Percella "Chesty, how is your feet doing?" and asked Percella if she missed him? to which Percella replied she did not and Censullo replied "you can lie with a straight face." See SOUMF ¶ 69. Censullo testified that he was not an employee of the City and did not receive a pay stub from the City. Id. at ¶¶ 75-76. After her reporting of these allegations, Russo conducted an investigation and provided a confidential memorandum to Stephen Gallo, the City Business Administrator. Id. at ¶ 78. During her investigation Russo interviewed Percella, Stergion, Censullo and Debby Falciani and summarized their interviews for her report. Ibid.

In her testimony, Percella testified she had never heard anyone use the term "chesty" and that this single remark was her only basis for the sexual harassment claim against Defendant Censullo. Id. at ¶¶ 80-81. During her investigation and interview of Defendant Censullo, he stated he walked past Percella's desk and said, "How is your foot Stacie?" to which she replied, " a little sore" and he said "you were missed while you were gone" as Percella recently had missed time

form work due to foot surgery. Id. at ¶¶ 91 and 100. Finally, Russo found Percella was not credible due to inconsistencies in her reporting of the incident to Russo and her testimony and recommended no further action. Id. at ¶¶ 101-102.

Percella has produced no evidence to support her claims that Defendant Censullo referred to her as "chesty" when asking her about her foot following her operation. Additionally, even if he did, and assuming such was done due to her gender, Percella has not established any evidence that this single comment was severe or pervasive enough to alter the terms and conditions of employment. If this comment was made, which Defendants deny, such is an offhand comment and not so egregious as to rise to the level of actional under the LAD. See Harris, 510 U.S. at 21; Faragher, 524 U.S. at 788.

Therefore, all claims of sexual harassment hostile work environment should be dismissed with prejudice.

## VI.   PERCELLA HAS FAILED TO ESTABLISH A CLAIM OF AIDING AND ABETTING AGAINST DEFENDANT WAKS AND DEFENDANT CENSULLO NECESSARY TO ESTABLISH DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND HARASSMENT UNDER THE LAD

In order for a defendant to be individually liable under the LAD the individual must have taken action to aid and abet the violation allegedly suffered by the plaintiff. See Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 569-572 (2008). Aiding and abetting "requires active and purposeful conduct." Tarr v. Ciasulli, 181 N.J. 70, 83 (2004). In order for a defendant to be liable for aiding and abetting, "(1) the party whom then defendant aids must perform a wrongful act that cause an injury; (2) the defendant must be generally aware of his role as part of an overall illegal and tortious activity at the time he provides the assistance, [and] (3) the defendant must knowingly and substantially assist the principal violation." Id. at 84.

The Third Circuit has found that in certain circumstances a supervisor may be liable for aiding and abetting his or her own conduct. Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999); see also Ivan v. County of Middlesex, 612 F.Supp.2d 546, 552-54 (D.N.J. 2009). New Jersey Courts have held that five factors must be considered to evaluate whether a defendant "knowingly and substantially assist[ed] the principal violation. Tarr, 181 N.J. at 84. These factors are "(1) the nature of the act encouraged; (2) the amount of assistance given by the supervisor; (3) whether the supervisor was present at the time of the asserted harassment; (4) the supervisor's relations to the others; and (5) the state of mind of the supervisor. Ibid. (citing Restatement (Second) of Torts § 876(b) comment d (1979)). The aiding and abetting analysis can lead to a "somewhat awkward theory of liability," because it appears to permit a supervisor to be held liable for "aiding and abetting" another individual, while letting a supervisor escape liability when the supervisor is the sole harasser. Hurley, 174 F.3d at 126.

However, the Third Circuit has found that a "supervisor, under New Jersey law, has a duty to act against harassment" and "[t]his duty can be violated by deliberate indifference or affirmatively harassing acts." Ibid. In Ivan, the Court "**without considering Blount's alleged individual violations of the LAD**" found a reasonable jury could find Blount liable for the aiding and abetting for willfully failing to act in response to the plaintiff's complaint about fellow officers. Ivan, 612 F.Supp.2d. at 553 (emphasis added). Further, in finding the possibility of aiding and abetting liability the Ivan Court found that Blount expressed little surprise to plaintiff's complaints of harassment and took no action to remedy the situation. Ibid. Further, the Court found that a fact finder could find that "Blount, Falcone, and Spicuzzo each aided violations of the LAD, that each was ' generally aware of his role as part of the' LAD violations at the time the assistance occurred

and engaged in 'active and purposeful conduct that knowingly and substantially assisted the LAD violations." Id. at 554.

Here, Percella has not alleged in the Amended Complaint, or presented any evidence, that Defendant Waks aided and abetted any other employees in discriminating and/or harassing Percella. Therefore, her claim must be, although not alleged in the Amended Complaint or demonstrated in the record, for individual liability against Defendant Waks for his own actions in aiding and abetting himself. As discussed above, the offhand profanity used by Defendant Waks, do not rise to the level of a LAD violation. Further, this situation is unlike Ivan, whether the court found aiding and abetting liability against the plaintiff's supervisors due to each supervisor's failure to act and willful indifference regarding the complaints made by the plaintiffs. The Ivan Court did not reach the issue of Blount's aiding and abetting of his own actions. Percella did not present any complaints to Defendant Waks but instead reported all of her allegations of discrimination and harassment to Donna Russo, except never reporting the pencil throwing incident. As demonstrated in the preceding paragraphs, these offhand comments by Defendant Waks do not rise to the level of a LAD violation and do not rise to the level of aiding and abetting under the LAD.

Therefore, no constitutional violation occurred and thus, Defendant Waks cannot be held liable for aiding and abetting.

## CONCLUSION

Therefore, for the reasons previously stated, the Defendants Motion for Summary Judgment should be granted, and Plaintiff's Amended Complaint should be dismissed with prejudice.

**FLORIO PERUCCI STEINHARDT
CAPPELLI TIPTON & TAYLOR, LLC**
Attorneys for Defendants, City of Bayonne,
Joseph Waks, and Richard Censullo.

Dated: May 14, 2020                    By:_____/s/ Teresa M. Lentini_____
                                       Teresa M. Lentini, Esquire (23341986)
                                       Nicholas A. Sullivan, Esquire (243092018)
                                       1010 Kings Highway South, Building 2
                                       Cherry Hill, NJ  08034
                                       Telephone: 856-628-8372
                                       Emails:tlentini@floriolaw.com
                                              nsullivan@floriolaw.com