# EXHIBIT M

LAW OFFICE
**CHARLES P. DAGLIAN**
34-36 JONES STREET
(At Journal Square)
JERSEY CITY, NJ 07306

CHARLES P. DAGLIAN

(201) 653-4543
(201) 653-4544
FAX (201) 653-0130

January 31, 2011

Charles M. D'Amico, Corporation Counsel
City of Bayonne
630 Avenue C
Bayonne, New Jersey 07002

RE: **Investigation of Employee of the Health Department**

Dear Mr. D'Amico:

## INVESTIGATION

Pursuant to the City's instruction, I investigated whether Health Department Employees of the City of Bayonne were involved in misconduct while employed by the City. The initial charge of employee misconduct was made by fellow employee, Stacie Percella. She alleged that based upon documents that she presented to the Bayonne Police Department, fellow employees committed the following:

1. That fellow employee, Vanessa Bryant, received a 4.75% longevity pay but was only entitled to a 3.75% longevity pay for someone with her years of employment.

2. That fellow employee, Vanessa Bryant, received compensation time that she was not entitled to receive.

3. That fellow Health Department Employee, Michael McKittrick, received compensation time that he was not entitled to receive.

4. That Joseph A. Waks, the Director of Municipal Services, received money as a bonus for not using sick days when in fact, he was not entitled to said bonus.

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -2-

There also arose an issue once Ms. Percella made these accusation as to how did Ms. Percella obtain the employee documents that she presented to the Police Department. The City, in my instruction, also requested I investigate that aspect for this investigation.

I began the investigation with the review of the reports of the Detective Nikki Diaz and Keith Striffolino of the Bayonne Police Department and an interview with them. They were the two detectives that investigated the allegations raised by Ms. Percella.

This interview was conducted on November 29, 2010 at the Bayonne Police Department. Both detectives essentially told the same statement concerning this incident. They advised me that they had met with Ms. Percella at the request of the Chief of Police. Ms. Percella responded to their offices at the police department. At that interview, she advised the officers that she worked in the Health Department and that two fellow employees, Vanessa Bryant and Michael McKittrick, were improperly receiving compensation time and Vanessa Bryant was receiving a higher rate of pay than entitled.

During the questioning of Ms. Percella, the officers asked her for any documentation and she advised them that she kept a personal binder with records of the activities of the office which included time sheets of all the employees. She further advised them that she could produce those documents to them. The interview was suspended as she went downstairs to her office and retrieved these documents. On the same day, a second interview was conducted by the Police to review all of the documents produced which were two hundred seventy four pages. Some of the documents were Ms. Percella's calculation of the alleged wrongdoing by the employees. When the officers requested to make copies of the documents, Ms. Percella was insistent that they make the copies while she was in the Police Station and return the originals to her immediately. She also advised that she was represented by an

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -3-

attorney, Peter Cresci, and that she had given Mr. Cressi the same set of documents for safe keeping. The officers then advised me that they had reviewed all of the documents and could not ascertain whether the mistakes that were clearly done had risen to the level that criminal charges could be brought against the two employees. Therefore, they had a meeting on October 7, 2010 with the Business Administrator, Steve Gallo, the Corporate Counsel, Charles D'Amico and the Chief and Deputy Chief of the Bayonne Police Department. At that meeting, they advised those present of their investigation and it was collectively decided that there be an internal investigation by the Department Head, Mr. Joe Waks. The officers concluded my interview by advising me that the had heard from Mr. Waks who recommended that no criminal charges should be brought against Ms. Bryant or Mr. McKittrick as in fact, Mr. Waks found no evidence of either party's intent to improperly receive any benefits from the City.

The interview was concluded with the officers intention to copy all of the documents provided to them by Ms. Percella so that I may review same.

I received the documents and have reviewed them. The vast majority were copies of the daily attendance sheet for the Health Department for part of 2009 and part of 2010. Ms. Percella also provided the employee data calendar and record of vacation and sick leave for employees, Vanessa Bryant, Michael McKittrick and Stacie Percella. There were also documents prepared by Ms. Percella that seemed to be conclusions of her investigation into these matters.

After reviewing the documents, I set up the meeting with all parties involved at the Bayonne Health Department.

I received a letter from Ms. Percella's attorney stating that his client would not be available for an interview even with counsel present but would answer, in writing, any questions submitted in writing to his office. By letter of January 10, 2011, I advised Mr. Cresci that this was not acceptable since part

PERCELLA-0250

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -4-

of my interview was to judge the credibility of the witness and that could only be done in a personal interview. I gave Mr. Cresci the opportunity to reconsider his client's position and present her for an interview. Mr. Cresci never responded to my letter and therefore, no interview was done with Stacie Percella. I then interviewed the following persons on January 13, 2011 and their interviews revealed the following information:

1. I interviewed Joseph Waks who advised me that he started working as the Director of Municipal Services on August 1, 2010. In that time, while he was relatively familiar with the personnel policies of the Bayonne Health Department, he did not know of the bonus for employees who do not use any of their sick time. He stated that he never received a check from the City Health Department for this bonus as was alleged by Ms. Percella. He also was not aware that anyone thought that he was entitled to said bonus. I then reviewed all of the documents provided by Ms. Percella and Mr. Waks had no knowledge of any of these documents nor how these records were kept in the Health Department. This concluded my interview with Mr. Waks.

2. I interviewed Vanessa Bryant, a Health Department employee who advised me that she worked for Bayonne from February 2, 1998 until she took a leave of absence from March 2005 until December 2005. She had returned to work in December of 2005 but was laid off due to budget reasons in November of 2007. She was rehired in her present position in October of 2009.

In her position, it was her responsibility to maintain the employment records of all of the employees of the Health Department.

She did advise that she had been receiving, for a short period of time, the 4.75% longevity pay due to her mistaken belief that she was entitled to same based upon the years that she had worked for the City since 1998. She then told me that the Payroll Department informed her that the longevity time that she had received for approximately two months, was too high since she could not count the time that she had been on leave of absence or laid off and that the correct longevity pay

PERCELLA-0251

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -5-

was 3.75%. The Payroll Department immediately changed her rate of pay and she repaid all extra money that she had received.

I then reviewed her compensation time, which she advised me was common for the department in that rather than paying overtime, a Health Department Employee was allowed to receive time off for extra hours worked during lunch or after their scheduled hours. She informed me that all the time must be approved. She had reviewed the documents and took the position that, at no time, did she utilize compensation time that she was not entitled to receive.

One of the issues that did arise during my interview was that no written documents on compensation time existed to show that the employee was entitled to compensation time for a certain period and that the supervisor had approved it. It was kept by each employee on a separate employee data calendar and each employee spoke verbally to the supervisor when they accrued the compensation time or used said time. It essentially was an honor system.

Finally, I spoke to Ms. Bryant on the documents that were in the possession of Ms. Stacie Percella. She reviewed all the documents and advised that Ms. Percella should not have had copies of these employee personnel files. All the documents were kept in a cabinet in her office but there was no lock on the cabinet. She did state that many times, these documents would have been on her desk in her private office. She further stated that she never gave anyone permission to copy any documents accept for their own personal files. Specifically, she never gave Stacie Percella permission to copy documents of other employees that Ms. Percella did indeed have in her possession. Ms. Bryant speculated that Ms. Percella could have come in to her office, taken these documents from her desk or cabinet and copied them without her permission but she has no direct knowledge of that fact. That concluded my interview with Ms. Bryant.

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -6-

3. I interviewed Michael McKittrick who advised me that he was a Health Department employee since September of 1994. He stated that he had occasionally worked extra hours during his lunch in which he received compensation time. He confirmed what Ms. Bryant had stated in that he only advised Ms. Bryant that he had accrued the compensation time and only got verbal approval from his supervisor to use said compensation time but the approval was always in advance. He stated emphatically that he had never used compensation time that he was not entitled to receive. I then questioned him as to the documents presented by Ms. Percella and he stated that he never had any of those documents in his possession and while he recognized some of the documents, he did not know where they were kept nor had he ever made copies of them.

4. I then spoke with Deborah Falciani who was in the Personnel Department. She stated that all of the records on longevity pay, compensation time, or employee benefits were kept by each department and forwarded to the Payroll Department. The Payroll and Personnel Departments never independently investigated any of the records forwarded to them by the departments but left it to the Department Supervisor to confirm its accuracy. She also verified that Vanessa Bryant had received the wrong longevity pay but once it was discovered, it was corrected and all monies had been repaid by Ms. Bryant. That concluded my interview with Ms. Faliciani.

5. I interviewed Gina Valdez who was the Senior Accountant in the Payroll Department. She also stated that each Department was responsible for tracking all of the compensation and employee benefits for each employee and the Payroll Department does not independently verify this information. She advised that the Payroll Department did check to see who was entitled to the sick time bonus for the fiscal year 2010 and those dates were verified by her department. They had received a document from the Health Department advising that Joe Waks was entitled to this bonus. But when it was investigated, it was clear that he was not entitled to said bonus as he had just began

PERCELLA-0253

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -7-

his employment. Ms. Valdez advised Ms. Bryant that Mr. Waks was not entitled to said payment and Mr. Waks never received the bonus payment, Ms. Valdez never spoke directly to Mr. Waks about this issue.

This concluded all of the interviews that this office perceived as necessary to investigate the issues raised by the City.

## CONCLUSION

Based upon all the information that I have received, I conclude the following as the issues that I was requested to investigate by the City of Bayonne:

### Vanessa Bryant

Ms. Vanessa Bryant mistakenly received a 1% extra longevity pay for a period of three months and that it was repaid. I do not conclude that Ms. Bryant, with the intent to defraud the City, received this extra longevity pay. She was incorrect in her calculation of the amount of longevity pay that she was entitled to and when advised by the Payroll Department that she was incorrect, she immediately repaid all extra monies that she had received. The miscalculation was clear upon review but I have concluded, after my interview with Ms. Bryant, who I find to be a very credible person, that she was confused and that confusion was innocent and not criminal. Therefore, I conclude that the charge by Ms. Percella that Ms. Bryant fraudulently received extra longevity pay to be unfounded and should be dismissed.

To the claim that Ms. Brayant received compensation time that she was not entitled to, I can't find any proof of any wrongdoing. Admittedly, the system utilized by the Health Department relies on the honor of each employee to properly document the hours accrued and utilized. I would suggest to the City that this policy be visited so that there would be more written documentation as to compensation time for all employees. But as to Ms. Bryant, again, based upon her credibility in her interview, I find no basis to

PERCELLA-0254

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -8-

conclude that she received compensation time improperly and therefore, would recommend that this charge be dismissed.

### Michael McKittrick

For the reasons stated above as Ms. Bryant and her issue of compensation time, this office takes the same position as to its investigation of compensation time of Michael McKittrick. Mr. McKittrick also presented himself as a very credible witness who has worked for the City of Bayonne since 1994. Again, he was working under the system that was presented to him as to compensation time, i.e. the honor system. I believe, based upon his credible testimony, that he never received compensation time for any period that he was not entitled to receive same. Since Ms. Percella refused any direct interview, I do not have the benefit of whatever proof she would present in her accusation. Therefore, I would recommend that this charge be dismissed against Mr. McKittrick.

### Joseph Waks

As to the issue of Joseph Waks receiving a bonus stipend check for not using any sick time for the fiscal year 2010, I conclude that Mr. Waks did not do anything to defraud the City. While Mr. Waks did sign a document presented to me by the Payroll Department that had his name on said document as being entitled to this payment, I conclude, based upon my findings of Mr. Waks being a credible person, that this was an innocent mistake. In fact, Mr. Waks did not have a recollection of this document nor did he feel that he was even considered for the payment. As stated above, Mr. Waks never received a payment for this stipend and therefore, it is the recommendation of this office that this charge be dismissed.

PERCELLA-0255

Charles M. D'Amico, Corporation Counsel
January 31, 2011
page -9-

### Stacie Percella

While Ms. Percella was not accused of any wrongdoing by any other member of the Health Department, there is the issue of how Ms. Percella came into possession of these private personnel documents of other employees. Since I did not have the benefit of an interview with Ms. Percella, this office can only speculate that she received these documents improperly by taking them from the possession of Ms. Bryant without Ms. Bryant's knowledge or consent and copying same. This issue is a serious charge against Ms. Percella since the possession of private personnel documents would be strictly against Bayonne Employee Policy. Furthermore, by Ms. Percella's testimony to the Bayonne Police Department, she indicated that she had given these documents to her attorney and therefore, a person, not employed by the City of Bayonne, was in possession of Bayonne City employee personnel files. It is the recommendation of this office that Ms. Percella should be charged in a disciplinary hearing for the improper possession and distribution of these documents. If that charge is verified, then it would be the City's decision as to the proper discipline.

Based upon all of the above, I completed my investigations with my recommendations. If you or the City needs further information, or a personal interview, please advise.

Very truly yours,

Charles P. Daglian, Esq.

CPD:jf