## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **STACIE PERCELLA,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CITY OF BAYONNE,** <br> **JOSEPH WAKS,** <br> **RICHARD CENSULLO,** <br><br> **Defendants.** | Civ. No. 14-3695 (KM) (JBC) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter arises from Plaintiff Stacie Percella's employment action against the City of Bayonne ("the City") and individual defendants Joseph Waks and Richard Censullo.

In the Amended Complaint, Percella asserted the following claims. In Count A, Percella alleged that the City and defendant Waks violated her rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. (Am. Compl. ¶17). [1] Percella submitted that those defendants violated her rights as a public employee "by failing to take action [and] retaliating against [her]." (*Id.*).

In Count B, Percella alleged that the City and Waks violated the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 *et seq*. Pursuant to the NJLAD, the Amended Complaint asserted claims for

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Am. Compl." = Plaintiff's Amended Complaint (DE 3)

discrimination and harassment (Am. Compl. ¶¶21-24), hostile work environment (Am. Compl. ¶¶26-31), and retaliation (Am. Compl. ¶¶38-41).

Finally, in Count D,[2] Percella raised common law claims of interference with contract against defendant Censullo (Am. Compl. ¶¶38-41) and breach of implied covenant of good faith and fair dealing against the City (Am. Compl. ¶¶46-46).

Defendants entered three separate motions for summary judgment (DE 118, DE 121, DE 122) and a joint motion to dismiss for spoilation of evidence (DE 119). Percella filed papers in opposition to defendants' motions (DE 127, DE 128, DE 129, DE 130, DE 131), and described DE 129 as "essentially a response with [a] Cross-Motion for Summary Judgment." (DE 129 at 1). Because Percella did not file a Notice of Motion or follow the proper procedures for filing a motion for summary judgment under Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, I declined to consider DE 129 as a cross-motion.

On November 9, 2020, I entered an order denying defendants' joint motion to dismiss for spoilation of evidence and granting in part and denying in part defendants' motion for summary judgment. (DE 143 at 1). Specifically, I denied defendants' motions with respect to the NJLAD hostile work environment claim. (*Id.*) All other aspects of the summary judgment motions were granted. (*Id.*)

Both parties now seek reconsideration of that order. For the reasons provided herein I will deny Percella's motion for reconsideration (DE 145) and will grant Defendants' cross-motion for reconsideration (DE 148).

## I.    Summary

I write primarily for the parties and assume familiarity with the facts. I recount only the most pertinent facts here and throughout the opinion.

Percella is a resident of Bayonne, New Jersey. (Am. Compl. ¶2) At the time Percella filed the Amended Complaint, she had been employed by the City of Bayonne for fifteen years. (Am.

---

[2]      There is no "Count C" in the Amended Complaint.

Compl. ¶6) For most of her tenure, Percella held the civil service position of Deputy Registrar. (Am. Compl. ¶¶6-7); (DE 118-8)

Before filing this action, Percella filed numerous complaints with the City, including a request for investigation into alleged payroll fraud (DE 118-17 at 2), a complaint of sexual harassment against defendant Censullo (DE 118-23 at 2), and a harassment complaint against defendant Waks for using profanity in the workplace (DE 118-33 at 2). Percella alleges that "each time" she filed a complaint, she was "retaliated against with adverse employment actions, including suspensions without pay." (Am. Compl. ¶13)

In addition to alleging retaliation, Percella contends that defendant Waks discriminated against her, sexually harassed her, and created a hostile work environment "up until the time of his termination as Director of Municipal Services." (Am. Compl. ¶9) Percella alleges that Waks placed demeaning magnets in the workplace that stated, "Girls From Bayonne . . . Leave em' Alone" (Am. Compl. ¶9), and "made offensive, vulgar, derogatory and sexual comments in the workplace," including "Fuck, Fuck, Fuck, You" (Am. Compl. ¶10).

With respect to defendant Censullo, Percella alleges that he interfered with her employment contract and, therefore, caused her to suffer economically. (Am. Compl. 11)

(DE 142 at 2-3).

## II.   Discussion

### a.  Legal standard

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). A party seeking to persuade the court that reconsideration is appropriate bears the burden of demonstrating one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d

Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

All of that said, the Court will not willingly persist in error if one is brought to its attention, and if it affected the result.

### b. Plaintiff's Motion for Reconsideration

Percella moves for reconsideration on various grounds. I will address each in turn.

### i.    Plaintiff's request for admissions

First, Percella submits that the Court abused its discretion in declining to deem admitted the matters raised in her request for admissions. (DE 145-1 at 5). In the prior action, Percella argued that defendants' summary judgment motions should be denied because the defendants failed to respond to her requests for admissions. Therefore, she submitted that the facts therein must be deemed admitted. (DE 129 at 2).

Federal Rule of Civil Procedure 36 governs requests for admissions.

A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

(A) facts, the application of law to fact, or opinions about either; and

(B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1).  A matter is admitted if, within thirty days after being served, "the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Once admitted, the matter "is

4

conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

The Third Circuit recognizes that "an admission of facts made under Rule 36 is an 'unassailable statement of fact that narrows the triable issues in the case.'" *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) (quoting *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1037 (3d Cir.1988)). Additionally, "Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment." *Id.* (*citing Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 176 n. 7 (3d Cir.1990)).

Rule 36 also provides, however, that "[s]ubject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). In declining to consider admitted the matters asserted within Percella's request for admissions, I relied on *Sunoco, Inc. (R & M) v. MX Wholesale Fuel Corp.*, 565 F. Supp. 2d, 572, 577-78 (D.N.J. 2008), where a court in this district "recognize[d] that a disposition on the merits is preferred over a decision based upon procedural technicalities" even where a party has not moved to withdraw or amend the admissions.

Percella submits that the Court erred in refusing to deem the matters admitted because (1) "there was never a 'motion to amend' nor a 'motion to withdraw' [her] Fed. R. Civ. P. 36 Admissions"; (2) "the citation of Rule 16(e) is misplaced"; and (3) reliance on *Sunoco* "is likewise misplaced" because "[u]nlike in *Sunoco*, no motion to neither [sic] amend nor motion to withdraw was filed" and "the issue regarding the Sunoco Admission delved into damages . . . which goes to the ultimate determination by a jury." (DE 145-1 at 7). These arguments are unavailing.

First, Percella misreads *Sunoco*. In that case, as in this, no motion to amend or withdraw the request for admissions was filed. *See Sunoco*, 565 F.

Supp. 2d 572 at 577 ("Although Rule 36 permits an admission to be withdrawn or amended by the Court upon motion, *see* Fed.R.Civ.P. 36(b), MX has never filed a motion for leave to withdraw or amend the deemed admissions."). Nevertheless, the court in *Sunoco* concluded that "[e]ven though MX never filed such motion," a "disposition on the merits is preferred over a decision based upon procedural technicalities." *Id.* The *Sunoco* court then proceeded with the two-part test to determine whether, if it had been filed, a motion to withdraw or amend would have been granted. *Id.* The two-part test asks (1) whether the withdrawal or amendment will "subserve the presentation of the merits" and (2) whether the nonmoving party will be prejudiced by permitting the moving party to amend or withdraw their admissions. *Id.* (internal quotation marks omitted) (citing Fed. R. Civ. P. 36(b)).

     This Court applied the *Sunoco* two-part test and determined that such a motion would properly have been granted:

> First, deeming the facts admitted would not "promote the presentation of the merits of the action," see Fed. R. Civ. P. 36(b), because many of the Requests seek admissions that contradict the evidence in the record. For example, Request #3 seeks an admission that Percella did not request to be transferred. (DE 128-3 at 19). However, Russo reported that Percella was transferred to the Tax Assessor's Office upon her own request (DE 118-26 at 6) and Censullo testified that he was "under the impression" that Percella requested the transfer to the Tax Assessor's Office (DE 118-25 at 8). Request #18(d) seeks an admission that defendants would not allow the police to prosecute Percella's allegation that employees were stealing time and, instead, "wanted to do their own investigation via Defendant Waks through Charles Daglian." (DE 18-3 at 22) However, the police report indicates that the police did not find evidence of a crime and that the police and City agreed an internal investigation would take place. (DE 118-16 at 2) Request #30 seeks an admission that plaintiff had no disciplinary history prior to 2012. (DE 128-3 at 24) However, Percella was served with a 31-a form on November 2009 for improperly notarizing a document (DE 118-11 at 2) and was suspended for sixty days in 2011 for confiscating and copying employee personnel documents without permission (DE 118-20 at 2). Request #46 seeks an admission that Percella reported

Waks for posting the offensive magnet "to the assigned EEO officer, but no action was taken." (DE 128-3 at 27) However, Percella testified that she did not file a complaint after discovering the magnet. (DE 118-9 at 79-80) Finally, Request #48 submits that when the City investigated Percella's "allegations as to Defendant Waks' hostile behavior," they did not interview her. (DE 128-3 at 27) However, Russo details, at length, her interview with Percella regarding the profanity incident. (DE 118-34 at 3-5)

Second, I find that Percella would not be prejudiced because defendants, in their Answer, had already formally denied most of the allegations in the Amended Complaint. (DE 8) Thus, the facts here are distinguishable from *Sunoco*, where the defendant contradicted the admission for the first time after the plaintiff filed for summary judgment. *See Sunoco*, 565 F. Supp 2d at 578. Here, defendants contradicted the admissions sought in the Requests in their Answer, well before they filed motions for summary judgment.

(DE 142 at 21-22).

Further, although the requests for admissions in *Sunoco* did involve damages, that was not the basis for the *Sunoco* holding. 565 F. Supp. 572 at 577-78. Applying the two-part test, *Sunoco* found that the plaintiff would have been prejudiced by withdrawal or amendment because "MX admitted in its answer to the complaint that it owed Sunoco money." *Id.* at 578. The court reasoned that "[t]o withdraw its deemed admission that it owed Sunoco money would be prejudicial *because it is in direct contrast to what it admitted in its answer to the complaint.*" *Id.* (emphasis added). Here, as explained in the November 9 Opinion, defendants, in their Answer, denied the admissions sought in the Requests before they filed motions for summary judgment. (*See generally* DE 8).[3]

─────────────

[3]     A request for admissions can be a useful streamlining device. The heart of any summary judgment motion, however, must be the evidence of record, and the Court will not countenance a party's attempt to circumvent the merits by procedural maneuvering.

A request for admissions (DE 128-3), like the complaint, is just a pleading calling upon the other party to state whether it admits or denies the specified allegations. But that had already been done; this request for admissions largely parrots the allegations of the complaint, and like the complaint it calls for a bare

Second, this Court's citation to Rule 16(e) was not "misplaced." Rule 36 itself cites Rule 16(e). Specifically, Rule 36 provides for a motion to amend or withdraw an admission "[s]ubject to Rule 16(e)." Fed. R. Civ. P. 36(b).

Percella does not cite to any case or rule that this Court overlooked. Instead, she resubmits her arguments that the items in her request should be deemed admitted. For that reason, and the reasons articulated above, Percella's motions regarding the requests for admissions is denied.

### ii.   Declining to consider DE 129 as a cross-motion for summary judgment

Percella asserts that her submission in opposition to defendants' motions for summary judgment should have been treated as a cross-motion for summary judgment. (DE 129) She states that it met each of the requirements of Local Rule 7.1(h), and that the Court therefore erred in declining to consider the submission as a cross-motion. (DE 145-1 at 9). Reconsideration is rejected, however; the court was not required to consider the submission as a cross-motion, and it would not have made any difference if it had done so.

Local Rule 7.1(h) provides as follows:

> A cross-motion related to the subject matter of the original motion may be filed by the party opposing the motion together with that party's opposition papers and may be noticed for disposition on the same day as the original motion, as long as the opposition papers are timely filed. Upon the request of the original moving party, the Court may enlarge the time for filing a brief and/or papers in opposition to the cross-motion and adjourn the original motion day. A party filing a cross-motion shall serve and file a combined brief in opposition to the original motion and in support of the cross-motion, which shall not exceed 40 pages. No reply brief in support of the cross-motion shall be served and filed without leave of the assigned district or magistrate judge. The original moving party shall file a single combined reply brief in support of its

admission or denial. It is not clear what purpose is served by reasserting the complaint's allegations and calling upon the defendant to admit or deny them again. Compare, for example, a motion for summary judgment, supported by evidence, which obligates the other party to produce evidence of its own, rather than rest on its pleadings.

motion and in opposition to the cross-motion, which shall not
exceed 40 pages (in contrast to the 15-page limit for replies as
provided in L.Civ.R. 7.2(b)). The provisions of L.Civ.R. 7.1(d)(5)
apply to dispositive cross-motions.

L. Civ. R. 7.1(h).

   In opposition to Defendants' motions for summary judgment, Percella
submitted Docket Entry 129. That submission is a brief, and it was
accompanied by a separate statement of facts. Counsel docketed the item on
the ECF system as "Brief in Opposition filed by STACIE PERCELLA re 121 First
MOTION for Summary Judgment." The clerk did not perceive it as a motion, or
mark it as such. There is no notice of motion. The first sentence of the brief is
"COMES NOW, Stacie Percella ("Percella"), Plaintiff in the above entitled
lawsuit, and the undersigned attorney for the Plaintiff, and requests this court
to deny Defendants' Motion for Summary Judgment (DE#118-123)."  Halfway
down the same page, the submission is described as "essentially a response
with Cross-Motion for Summary Judgment." (DE 129 at 1). To make a motion,
however, it is not enough to throw in a sentence stating that a responding brief
is "essentially" a motion. A motion is defined by certain formal requisites, most
prominently a notice of motion.

   In addition, the purported statement of facts accompanying DE 129 fails
to comply with the requirements of Federal Rule 56(c)(1) for asserting facts in
support of summary judgment:

   A party asserting that a fact cannot be or is genuinely disputed must
   support the assertion by:

   (A) citing to particular parts of materials in the record, including
   depositions, documents, electronically stored information, affidavits
   or declarations, stipulations (including those made for purposes of
   the motion only), admissions, interrogatory answers, or other
   materials; or

   (B) showing that the materials cited do not establish the absence or
   presence of a genuine dispute, or that an adverse party cannot
   produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(a) elaborates on that standard as follows:

> On motions for summary judgment, the movant *shall* furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs *citing to the affidavits and other documents submitted in support of the motion.* A motion for summary judgment unaccompanied by a statement of material facts not in dispute *shall* be dismissed.

L. Civ. R. 56.1(a).

Percella was required to submit a statement of undisputed facts with citations to affidavits or other evidence. L. Civ. R. 56.1(a). She failed to do so. The statement of undisputed facts submitted with DE 129 is a mere list, with not a single citation to the record. (*See* DE 129-1). Indeed, it is no more than a copied and pasted version of the request for admissions, with the added sentence: "All of these statements are deemed admitted under Fed. R. Civ. P.36." (*Compare* DE 129-1 *with* DE 128-3 at 19-31). Because I have not accepted these deemed admissions, the "cross-motion" is defective; both the Federal and Local Rules require evidentiary support for each statement of fact, but none is cited. Fed. R. Civ. P. 56(c)(1); L. Civ. R. 56.1(a).

In support of reconsideration, Percella submits that even if the cross-motion was deficient, Federal Rule 1 requires that it "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." (DE 145-1 at 9 (quoting Fed. R. Civ. P. 1)). Additionally, she argues that it is within the Court's discretion "to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." (*Id.* (quoting *Hitachi Capital Am. Corp. v. Nussbaum Sales Corp.*, No. 09-731, 2010 WL 1379804, at *3 (D.N.J. Mar. 30, 2010)). *See also United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (holding "that a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so,

and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment.").

I find there is no sound rationale for departing from the rules, because this was not a case of a mere technical or procedural defect. Even considered as a motion for summary judgment, with procedural defects overlooked, this motion would necessarily be denied.

First of all, I held that, far from requiring summary judgment in plaintiff's favor, the record required summary judgment in defendant's favor on most of the claims.[4]

Second, even on reconsideration, Percella fails to cite to items in the record that would create an issue of fact on those claims. If it were possible to remedy this defect, it could have been easily done. For example, Percella could have taken her statement of facts and inserted record cites. She did not.

Third, Percella cites only one basis for the facts she proffers. That basis consists of her requests for admissions. I have already ruled, however, that there is no sufficient basis for the matters set forth in the requests to be deemed admitted. And I have upheld that ruling on reconsideration. *See supra* Section II.b.i.

The motion for reconsideration of Percella's cross-motion is therefore denied.

### iii.   Retaliation claims and the two-year statute of limitations

The Amended Complaint asserted two types of relation claims: a federal claim of retaliation under the First Amendment (Am. Compl. ¶¶16-20) and a state claim of retaliation under the NJLAD (Am. Compl. ¶¶34-37). Percella submits that the Court erred in holding that "the retaliation against [her] was outside the two (2) year statute of limitations." (DE 145-1 at 10). For the most

---

[4]    I do not overlook the principle that a cross-motion for summary judgment—if that is what this is—must be evaluated separately, on its own terms. *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

part, I awarded defendants summary judgment on grounds other than the statute of limitations, so there is nothing to reconsider.

Specifically, Percella lists the following four actions, and protests that they occurred within the two-year period prior to filing the Complaint on June 9, 2014:

> **[a]**   a two (2) day suspension was promulgated June 19, 2013, served June 21, 2013 and June 24, 2013. This is a tangible employment action; and
>
> **[b]**   a sixty day (60) suspension was promulgated and served starting January 14, 2014. This is a tangible employment action; and
>
> **[c]**   Plaintiff was removed from Health Department (Municipal Services) to DPW (Directorate of Public Works) was effectuated February 4, 2013, likewise in retaliation for complaints, as well as public statements protected under the First Amendment. These included the Super Storm Sandy and FEMA overpayment violations. Percella was retaliated against, and it was within the two (2) years of filing the federal complaint.
>
> **[d]**   the lascivious magnet the Director of Municipal Services, Defendant Joe Waks, thought was appropriate for the workplace was placed on Plaintiff's workstation (on front of metal desk) on September 9, 2012 (see Exhibit 1 to Plaintiff's complaint). Percella brought this complaint within two (2) years of the occurrence. In fact, the magnets are still around the workplace.

(DE 145-1 at 10-11).

It is true that I granted the defendants summary judgment on the substantive federal and state retaliation claims. Contrary to Percella's assertion, however, I did not rule that incidents a, b, c, and d occurred outside the two-year statute of limitations.

With respect to First Amendment retaliation, the Court found that certain acts (including a, b, c, and d) were *either* outside of the statute of limitations *or* did not involve protected speech (or both). (DE 142 at 27). As explained in the opinion, a government-employee plaintiff in a First Amendment retaliation action must show that in engaging in protected activity,

12

"she spoke, not merely as an employee, but as a citizen, on a matter of public concern." *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 633 (D.N.J. 2014); *see also Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (noting that a government employee's speech must involve a matter of public concern to constitute protected speech). "Speech involves a matter of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of general interest and of value and concern to the public.'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

Regarding **[a]**, I found that there was insufficient evidence that Percella spoke on a matter of public concern when she called Corporation Counsel D'Amico a "disgrace." (DE 142 at 30). I found that statement to be "nonspecific and, apparently, personal." (*Id.*). Such an expression of irritation with a government coworker is not protected by the First Amendment. *See Brennan*, 350 F.3d at 412. It followed, then, that the later two-day suspension would not support a claim of First Amendment retaliation, whether it was timely or not. The statute of limitations played no part in this reasoning.

Regarding **[b]**, I ruled that Percella was not speaking as a citizen on a matter of public concern when she spoke on the telephone with a resident who called to notify the Department of a potentially hazardous condition. (DE 118-28 at 2; DE 142 at 27). Percella was charged with conduct unbecoming a public employee because she failed to respond to the potential hazard in a competent matter and dispensed misinformation to the resident, including:

> (1) "we only have four (4) workers assigned to trees and [the] mayor always has men doing other things" and (2) "me and my boss have discussed this and nothing ever gets done because men are assigned to do other things by the mayor"; (3) "you are Number 50 on the list" and "it will take another year for the City to respond."

(*Id.*). As explained in the Opinion, Percella spoke here as an employee for the Department of Public Works, and not as a citizen addressing a matter of public concern. (DE 142 at 26-27 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)

(holding "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")). The 60-day suspension that followed in January 2014 would therefore not support a claim of First Amendment retaliation, whether or not it was timely. The statute of limitations played no part in this reasoning.

I turn to **[c]**, Percella's February 4, 2013, 2013 transfer to the Public Works Department. In the Opinion, I noted that, while Percella's pay did not change, she testified that she was given reduced responsibilities, supporting a possible inference that this was an adverse employment action. (DE 142 at 4). I found insufficient evidence, however, that the transfer was connected to Percella's reporting of FEMA violations.

In her Amended Complaint and in her briefing (DE 129), Percella said the following about the FEMA incident:

- Amended Complaint ¶12: "Plaintiff Percella had a history of voicing her displeasure of illegality and inappropriate activity in the workplace. Plaintiff Percella recognized early on that FEMA money during Hurricane Sandy was being distributed illegally. Plaintiff Percella had recently uncovered that two co-workers were in fact inappropriately fudging their official time sheets in order to gain an advantage of their time and corresponding pay. This matter was allegedly investigated by the Defendant City of Bayonne. While employees Bryant and McKitrick were found to have inappropriately recorded their time, Plaintiff Percella was the [*sic*: one] punished for bringing such illegality to the attention of management."

- Amended Complaint ¶17: "Plaintiff is a public employee of the City of Bayonne. The Defendants deprived Plaintiff of him [*sic*] rights under the First and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983 by failing to

take action, retaliating against the Plaintiff, and essentially retaliating against the Plaintiff. Plaintiff had reported illegalities stemming from FEMA money being distributed, failure to abide by the open records act; fellow employees falsifying time sheets; failure of health officer to abide by the contract he held with the City of Bayonne; falsification of health inspections and licenses; to name several."

- Reconsideration brief, DE 129 at 3 (alteration in original): "The second failure of the Defendants' Motion for Summary Judgment is the fact that the Civil Rights violations due to 'protected communications' indeed took place under 42 U.S.C. § 1983, under the First and Fourteenth Amendments of the United States Constitution. In Fact, Plaintiff Percella complained publicly to the City of Bayonne; the City Council both as Local AFSCME union delegate, and a public citizen; the City of Bayonne Police Department, as well as the State of New Jersey about violations of statute [health officer], FEMA violations, theft of goods and services (including theft of official time by 2 employees; as well as violations of the civil service administrative code."

- DE 129 at 11: "Plaintiff Percella had a history of voicing her displeasure of illegality and inappropriate activity in the workplace. Plaintiff Percella recognized early on that FEMA money during Hurricane Sandy was being distributed illegally. Plaintiff Percella had recently uncovered that two co-workers were in fact inappropriately fudging their official time sheets in order to gain an advantage of their time and corresponding pay. This matter was allegedly investigated by the Defendant City of Bayonne. While employees Bryant and McKitrick were found to have inappropriately recorded their time, Plaintiff Percella was the

punished [sic] for bringing such illegality to the attention of management. ([Am. Compl.] ¶12)."

The preceding statements might surmount the threshold for alleging a cause of action, but statements in briefs and complaints do not signify anything for purposes of summary judgment. What Percella failed to do was cite any *evidence* that (a) she publicly blew the whistle about FEMA-related misconduct, and (b) her transfer to the Public Works Department at the same pay was causally connected to such whistleblowing.

Even now, on reconsideration, Percella fails to point to anything in the record regarding the FEMA reporting. Instead, Percella submits that the FEMA complaint would be publicly available under the Open Records Act "and the GRC (Government Records Council), docket no. 2013-109." (DE 145-1). Neither the docket citation nor the underlying documents were provided to the Court prior to this reconsideration motion. Those proceedings having allegedly occurred in 2013, the evidence was clearly available well before the Court issued its November 9, 2020 decision. So the Court did not "overlook" this evidence; rather, Percella failed to attach it or even cite it. I will not grant reconsideration based on evidence that was available at the time of the original motion.

Finally, regarding **[d]**, Percella for the first time gives the date that Defendant Waks placed the "lascivious magnet" in the workplace: September 9, 2012, a date that falls within the two-year limitation period. (DE 145-1 at 10-11). But I did not find that this retaliation claim was untimely, so that is no basis for reconsideration.

In the November 9 Opinion, I found that, for purposes of her First Amendment retaliation claim, Percella failed to demonstrate that she engaged in protected activity, because she did not file a complaint after discovering the magnets. (DE 142 at 32; DE 118-9 at 29 (testifying that she did not file a

complaint or notify her supervisor after discovering the magnet)).[5] On reconsideration, Percella offers nothing to dispute this or to demonstrate a fact or source of law the court overlooked.

In this respect, I did not base my ruling on the statute of limitations. Indeed, with respect to the parallel NJLAD retaliation claim, I found that Defendants *failed* to demonstrate that the magnet incident occurred outside the two-year limitation period. (DE 142 at 35). Percella was uncertain as to the date of the incident. Defendants, I held, failed to carry their burden on the affirmative statute of limitations defense (DE 142 at 35 (citing DE 118-9 at 73)).

The Court did not find the magnet incident occurred outside of the two-year period for purposes of Percella's retaliation claims, so her request for reconsideration is moot, and is denied in relation to the retaliation claims.

### iv.    Breach of implied covenant of fair dealing

Next, Percella submits that the Court "miss[ed] the separate action of Breach of Implied Covenant & Fair Dealing." (DE 145-1 at 14 (citing DE 142 at 42)). The Opinion, however, did not "miss" that claim: "Finally, Percella alleges two common law contract claims: interference with contract against defendant Censullo and breach of implied covenant of good faith and fair dealing against the City." (Opinion, DE 142 at 42). Percella submits that she "was met each and every time with retaliation for filing a complaint." Those "retaliatory suspensions," she says, breached the implied covenant of fair dealing in a manner "distinct and separate from Defendant Censullo interference of contract claims." (DE 145-1 at 15).

The Court dismissed all of Percella's contract claims because she failed to establish the existence of a contract. (DE 142 at 42). The implied covenant of good faith and fair dealing is not a standalone source of rights, but a covenant *of a contract.* No contract, no claim. Percella does not argue that the Court

---

[5]     The magnet also figures in Percella's hostile work environment claim. Here, I deal only with the lack of evidence for any claim that defendants retaliated against her for lodging a complaint about the magnet, which she admits she did not do.

17

overlooked any facts or case law with respect to that ruling. The motion for reconsideration as to the breach of the implied covenant of good faith and fair dealing is denied.

### v.   Gender discrimination law under the NJLAD

Finally, Percella submits, without referring to any overlooked case law, that "[t]he gender discrimination under NJLAD should be revisited." (DE 145-1 at 16). As explained throughout, reconsideration is appropriate only where a court "has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko,* 993 F. Supp. 2d at 478; *see also* L. Civ. R. 7.1(i) (requiring "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion."). A blanket statement that the dismissal of a claim "should be revisited" does not suffice. Therefore, I will not reconsider the dismissal of Percella's NJLAD sex discrimination and retaliation claims.

Additionally, Percella states that "[t]he workplace was hostile and abusive due to Waks' actions because of Plaintiff's gender. The magnet likened her to a Prostitute; it was placed on her work station (frontal metal desk). There are genuine issues of material fact on this issue of sexual harassment." (DE 145-1 at 16). Here again, Percella is pushing on an open door; the Court *did* find a genuine dispute of material fact regarding whether the magnet would have appeared in Percella's workspace but for her gender and, if so, whether the discrimination was severe or pervasive. (DE 142 at 39-40). Percella's NJLAD hostile work environment survived Defendants' motion for summary judgment, and remains in the case. Reconsideration is therefore denied.

In light of the foregoing, I will deny Percella's motion (DE 145).

### c.  Defendants' Cross-Motion for Reconsideration

Defendants have filed a cross-motion for reconsideration of the court's denial of summary judgment with respect to the NJLAD hostile work environment claim. (DE 148-1 at 11). Percella does not address the merits of

Defendants' cross-motion, arguing only that the cross-motion is untimely. (DE 150 at 1-2).

### i. Timeliness of Defendants' cross-motion

Local Rule 7.1(i) provides that "a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge." L. Civ. R. 7.1(i). Here, the relevant order was entered on November 9, 2020. (DE 143). Percella filed her motion for reconsideration on the fourteenth day, November 23, 2020. That date, she argues, was Defendants' deadline as well. But defendants waited another fourteen days, until December 7, 2020, to file their opposition to plaintiff's motion and cross-motion for reconsideration. (DE 148)

Immediately preceding Rule 7.1(i) is Local Rule 7.1(h), which grants blanket authorization for the filing of a cross-motion at the time opposition papers are due:

> (h) Cross-Motion
>
> A cross-motion related to the subject matter of the original motion may be filed by the party opposing the motion together with that party's opposition papers and may be noticed for disposition on the same day as the original motion, as long as the opposition papers are timely filed. Upon the request of the original moving party, the Court may enlarge the time for filing a brief and/or papers in opposition to the cross-motion and adjourn the original motion day. A party filing a cross-motion shall serve and file a combined brief in opposition to the original motion and in support of the cross-motion, which shall not exceed 40 pages. No reply brief in support of the cross-motion shall be served and filed without leave of the assigned district or magistrate judge. The original moving party shall file a single combined reply brief in support of its motion and in opposition to the cross-motion, which shall not exceed 40 pages (in contrast to the 15-page limit for replies as provided in L. Civ. R. 7.2(b)). The provisions of L.Civ.R. 7.1(d)(5) apply to dispositive cross-motions.

D.N.J. Loc. Civ. R. 7.1(h).

Defendants point the Court to the decision in *L.W. v. Jersey City Board of Education*, No. 17-6451, 2018 WL 4491174, *1 (D.N.J. Sept. 19, 2018). There,

the court considered the merits of a cross-motion filed after the fourteen-day period. In *L.W.*, the court issued its order denying summary judgment on July 23, 2018. 2018 WL 4491174 at *1. L.W. filed a motion for reconsideration of that order on July 30, 2018. (No. 17-6451, DE 43). Jersey City Board of Education then filed its opposition to the motion for consideration and support of cross-motion for reconsideration on August 20, 2018. (No. 17-6451, DE 44). The Board's cross-motion was filed after the fourteen-day period contemplated by Local Rule 7.1(i) but was still considered by the court. *See L.W.*, 2018 WL 4491174 at *1.

As precedent, *L.W.* is weak. It does not discuss the timeliness of cross-motions or rule on the timeliness of the cross-motion in that case. Otherwise, there is no definitive case law guidance as to the interplay, or priority, between Local Rules 7.1(h) and 7.1(i). Defendants, then, may not have had fair warning that a cross-motion would be untimely, a circumstance that would weigh in favor of relaxing the time limit—provided, of course, the Court has the discretion to do so.

The time limits of Local Rule 7.1(i) are not jurisdictional. Indeed, the Court retains the discretion to alter its rulings at any time prior to final judgment.[6] The question before the Court is whether a cross-motion, filed beyond the 14-day deadline for the original motion, may be treated as timely. I believe the Court may, if not automatically then at least as a discretionary matter, accept the cross-motion as timely.

---

[6]    *See Ingram v. S.C.I. Camp Hill*, 448 F. App'x 275, 277 (3d Cir. 2011) (affirming district court's *sua sponte* reopening previously-denied motion for summary judgment and granting renewed motion); *Foster v. Westchester Fire Ins. Co.*, No. CIV. 09-1459, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012) ("[T]he trial court maintains inherent authority to reconsider interlocutory orders, such as the partial denial of a motion for summary judgment, so long as it retains jurisdiction over the case"). That discretion, of course, will be guided by the procedural and substantive principles governing the motion— in this case, the motion for reconsideration of denial of summary judgment.

A cross-motion is intended to relate back to the original motion, both as to subject matter and briefing schedule. It may thus be regarded as part of the same package as the original motion. The purpose of a Rule 7.1(h) cross-motion is to ensure that related contentions are considered together.

Percella filed her own motion for reconsideration on day 14, the last day possible within the Rule 7.1(i) deadline. (DE 145). Therefore, it would have been impractical for Defendants to file a cross-motion on or before that date; they would need to have prepared and filed their own, independent motion within the 14-day period. That circumstance suggests one manner in which consideration of the cross-motion as such may serve judicial economy. Consider that Party B may be content to refrain from moving for reconsideration, but only if Party A does the same. If not permitted to wait and see, Party B may be forced to file its own, unnecessary motion within 14 days, simply out of caution. Permitting a cross-motion after the filing of the first motion thus makes a certain amount of sense.[7]

Where a timely motion for reconsideration has been filed, I see the sense of permitting the other party to file a cross-motion for reconsideration outside of the fourteen-day period. In this particular case—where Percella's motion was filed on the last day of the Rule 7(i) period, and neither the rules nor the case law gave Defendants fair warning that a cross-motion would be untimely—I will exercise my discretion to consider Defendants' cross-motion.

### ii. Merits of Defendants' cross-motion

Defendants submit that this Court improperly denied its motion for summary judgment with respect to Percella's hostile work environment claim. (DE 148-1 at 10). Percella responds to none of Defendants' arguments. (DE 150 at 1-2). I nevertheless analyze them with a skeptical eye.

---

[7]     A similar approach is built into the deadlines for civil appeals under the Federal Rules. *See* Fed. R. App. P. 4(a)(3) (where one timely appeal is filed, other parties are given an additional 14 days to file their appeals).

### a. "Severe or pervasive"

Percella's hostile work environment claim related to a magnet that appeared near her workstation. (DE 142 at 40). The magnet depicts three women clad in lingerie and states, "Girls from Bayonne . . . Leave 'em alone." (DE 3-1 at 1). Above each woman is a different national flag: one Polish, one Italian, and one Irish. (*Id.*). The top of the magnet states, "joewaks.com" (*Id.*). Percella testified that phrase on the magnet is a common saying in Bayonne which connotes that Bayonne women are "trash" or "sluts." (DE 118-9 at 74).

First, Defendants submit that the Court incorrectly determined that Percella testified that she found three magnets – one at her desk, one near Stergion's desk, and one on a filing cabinet. (DE 148-1 at 11 (citing DE 142 at 39)). The Court's misapprehension—and that is apparently what it was— arose from Percella's deposition, which I read as suggesting that three magnets, not one, were placed around the work area:

> Q:    Do you recall where you were when you saw the magnet?
>
> A:    In my office. It was in front of my desk - - a bunch of decks and file cabinets.
>
> Q:    Which office was this?
>
> A:    The Health Department.
>
> Q:    You said it was in front of your desk?
>
> A:    In front of my desk, in front of Simon's desk, on a file cabinet.
>
> Q:    Anywhere else?
>
> A:    Wherever he [Defendant Waks] put them.

(DE 118-9 at 73). The Court also relied on the following testimony:

> Q:    So this magnet appeared in front of your desk, near Sy's work area, and also it was against a file cabinet all in the Health Department; correct?

22

       A:     Correct.

(DE 118-9 at 77). [8]

I took this to mean that there were multiple magnets in multiple locations. Defendants now submit that Percella witnessed only one magnet on one filing cabinet, and Percella does not seem to dispute this. (DE 148-1 at 11). Indeed, in support of her own motion for reconsideration, Percella clarified: "**The** magnet likened her to a Prostitute; **it** was placed on her work station (frontal metal desk)." (DE 145-1 at 16; emphasis added). I conclude that, in my prior Opinion, my inference was incorrect. The allegation seems to be that one magnet was placed, not that multiple magnets were placed, at or near Percella's workstation.

To establish a prima facie hostile work environment claim under the NJLAD, a plaintiff "must show that the conduct complained of would not have occurred but for the employee's membership in a protected class, and that the conduct was severe or pervasive enough to make a reasonable person believe that the conditions of employment were altered and the working environment was hostile or abusive." *Maddox*, 50 F. Supp. 3d at 627 (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453-54 (N.J. 1993)). In the Opinion, I explained that the presence of multiple magnets referring to women as "sluts" might satisfy the severe or pervasive prong: "A rational fact finder, crediting Percella's testimony, could find that the single incident of posting multiple magnets that refer to women as 'sluts' constituted harassment severe enough to establish a hostile work environment claim." (DE 142 at 40). If the jury credited Percella's testimony that the phrase on the magnet means that Bayonne women are "sluts," then an objectively reasonable person might find that the presence of multiple such images near a woman's work station could alter the conditions of her employment and render the working environment hostile.

---

[8]    It did not help that Defendants' papers on the original motion addressed the magnet incident only in relation to the retaliation claim, not the hostile work environment claim. Thus, the issue of single vs. multiple magnets was not at the fore of the discussion.

I am aware, of course, that a hostile work environment claim may be based on a single incident, if that incident is very severe. This was, however, a very close case, at best. That only one magnet was placed near Percella's workstation, offensive and obnoxious as that may have been, affects the Court's "severe or pervasive" calculus. On that issue, *Taylor v. Metzger*, 706 A.2d 685 (N.J. 1998), perhaps the best case for plaintiff, is highly instructive, and I discuss it at some length.

In *Taylor,* the Supreme Court of New Jersey found that "a single utterance of an epithet can, under particular circumstances, create a hostile work environment." *Id.* at 690; *see also id.* at 687. The plaintiff, Taylor, was an African-American woman, employed as a sheriff's officer. In her presence, the County Sheriff said to an undersheriff, "There's the [offensive racial term],"[9] and they both laughed. *Id.* She was reduced to tears, only to face an insensitive, mocking reaction from a third co-worker, who picked up on the insult in a joking manner. *Id.* Taylor introduced additional evidence of psychological damage.

The New Jersey Supreme Court found that the Sheriff's "remark had an unambiguously demeaning racial message that a rational factfinder could conclude was sufficiently severe to contribute materially to the creation of a hostile work environment." *Id.* at 691. In doing so, the court reasoned that, in choosing the phrase "severe *or* pervasive," the Supreme Court had rejected an alternative, "regular-and-pervasive" test; the implication, *Taylor* held, was that a single incident may support a hostile work environment claim, if it is so severe as to "alter the conditions of employment and create an abusive work environment." *Id.* at 689 (quoting *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986)).

The number of acts is of course significant. Nevertheless, there is no "magic number" or threshold that can be mechanically applied:

---

[9] The term, to be somewhat more clear, was not the "n word," but there was no doubt that it was an highly offensive racial reference.

> The standard contemplates conduct that is either severe or pervasive. Although the conduct may be both, only one of the qualities must be proved in order to prevail. The severity of the conduct may vary inversely with its pervasiveness. Whether the conduct is so severe as to cause the environment to become hostile or abusive can be determined only by considering all the circumstances, and this determination is left to the trier of fact.

*Id.* at 690 (quoting *Nadeau v. Rainbow Rugs, Inc.*, 675 A.2d 973, 976 (Me. 1996) (Title VII case)).

Hence, the summary-judgment issue in *Taylor* boiled down to "whether a rational factfinder could reasonably determine on the basis of plaintiff's evidence that the racial insult directed at her by the sheriff in the presence of the undersheriff was, under the surrounding circumstances, sufficiently severe to have created a hostile work environment." *Id.* at 689–90. *Taylor* canvassed the racial-slur case law. "Usually," it found, "repeated racial slurs must form the basis for finding that a hostile work environment has been created." *Id.* at 690 (citing cases). Thus, "while it 'is certainly possible' that a single incident, if severe enough, can establish a prima facie case of a hostile work environment, 'it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile.'" *Id.* at 689 (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 606–07, 626 A.2d 445 (1993)).

*Taylor* pointed out that even very offensive slurs, including the "n word," if not repeated, have frequently been found not sufficient to make out a hostile work environment claim. *Id.* at 690 (citing cases). Without necessarily endorsing each holding, I take away the lesson that the issue is highly context-dependent.

The claim, at least as it now appears, is that one such magnet appeared near Percella's workstation. The evidence is sufficient that the magnet was produced by Waks, and a fact finder could likewise conclude that he placed the magnet there. Under *Taylor,* a single-incident hostile environment claim is not

ruled out as a matter of law, but I must consider whether this is the "rare and extreme case" in which a single incident creates a hostile environment.

Percella's facts are quite distinguishable from those in *Taylor*. There, the racial remark was made in-person and the epithet was directed to the plaintiff personally. The remark came from the top: the County Sheriff, who was not only the plaintiff's employer but her ultimate superior in the paramilitary chain-of-command structure of the sheriff's office. A jury could take that as a strong indication that the ultimate policy maker for the department operated under a racist belief system. The remark received immediate reinforcement and approval from high-ranking superior, who was a deputy sheriff's officer, and then from another fellow employee.

Sexism and racism in the workplace are both objectionable and are both addressed by Title VII and § 1983; the distinctions between *Taylor* and this case involve the nature of the message and the surrounding facts. The message printed on the magnet was generally insulting to the women of Bayonne, to be sure. I must credit Percella's testimony that the saying implied sexual immorality. Such statements, even when phrased as "jokes," are a standard weapon in the arsenal of oppression of women. Still, the posting of the magnet did not rise to the level of a face-to-face public racial insult, as in *Taylor*. Percella was not personally held up to ridicule before another supervisor, who endorsed the insult, as in *Taylor*. She was not individually accused of possessing any undesirable trait, except insofar as she was a female resident of Bayonne—an obvious absurdity. I do not imply, of course, that to be hostile, a racist or sexist statement must be true; indeed, such statements are presumptively false. But a slur against the women of Bayonne, unlike racist epithets for African-Americans generally, is in the nature of a juvenile taunt, and was not backed by a centuries-old history of organized hatred and oppression.[10]

---

[10]    Again, I am not weighing sexism against racism, a fruitless comparison. I am comparing the situation in *Taylor* with that in Percella's case.

A line must be drawn between mere offensive language and the creation of a pervasively hostile work environment. A "recurring point" in case law in this area "is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

The magnet incident was inane and regrettable. I reject the argument, however, that this single incident rises to the level of the "rare and extreme" case in which a single slur was so severe as to create a hostile work environment. This reversal of my prior holding is motivated, in part, by my understanding that a single magnet, not multiple magnets, was involved. I frankly acknowledge, however, that I have reexamined my prior reasoning and believe that my current view is the better one.

One loose end remains. Although the hostile environment allegations of the complaint do not refer to it, and the briefing does not stress it, there was another alleged incident that might be considered as part of a hostile environment claim. I refer to Percella's allegation of sexual harassment against Censullo. On October 6, 2010, Percella filed an internal complaint of sexual harassment with the City's Sexual Harassment Officer, Donna Russo. (DE 118-23 at 2) Percella alleged that on that date, defendant Censullo approached her and stated, "Chesty, how is your feet doing,"[11] asked Percella if she "missed him," and when Percella responded, "no," stated, "you can lie with a straight face." (DE 118-23 at 2). In the Amended Complaint, Percella did not retain the sexual harassment complaint against Censullo. However, Percella provided evidence of that interaction in relation to her contract claims involving Defendant Censullo.

---

[11] Percella had recently undergone foot surgery. (DE 118-9 at 27-28)

Even considering that interaction, I still find that Percella failed to establish her hostile work environment claim. Plaintiffs have failed to sustain such a claim on far worse facts. For example, in *Clayton v. City of Atlantic City*, the Third Circuit held that, "although rude and distasteful," lewd remarks about a female police officer, such as "which one of those guys is hitting her in the ass tonight," aggregated with the Chief of Police "grabbing [the plaintiff's] buttock in public and comment[ing] that it was 'the only thing she has going for her,'" fell "short of reaching the level of conduct so severe or pervasive as to render [her] work environment hostile." 538 F. App'x 124, 128-29 (3d Cir. 2013). In *Stefanoni v. Board of Chosen Freeholders of County of Burlington*, the Third Circuit dismissed, *inter alia*, an NJLAD discrimination claim because the plaintiff failed to demonstrate by a preponderance of the evidence that two instances of physical contact and five compliments on her hair and perfume constituted discrimination because of her sex. 65 F. App'x 783, 784 (3d Cir. 2003). With respect to the physical contact, the plaintiff, an investigator in Burlington County Sheriff's Department, alleged that the Sheriff briefly brushed her breast on one incident and the small of her back "and upper buttocks area" on another occasion. *Id.* at n.1. The Court found that "[t]he touching episodes, even aggregated with the compliments, do not provide evidence of intentional gender discrimination under Title VII." *Id.* at 786. Additionally, in *Morales-Evans v. Admin. Office of the Courts of N.J.*, 102 F. Supp. 2d 577, 586-90 (D.N.J. 2000), a court in this district held that no reasonable juror could find that the events complained of constituted severe or pervasive harassment where the plaintiff alleged that her supervisor "badger[ed] her to commence a social relationship, touch[ed] her hand and kissed her inappropriately, and ma[de] sexually offensive remarks," including calling her "so voluptuous."

Here, Percella reported that Defendant Censullo addressed her as "Chesty" one time. In light of that persuasive case law, even aggregating that

remark with the magnet incident, I find it is still not enough to establish a hostile work environment.

### b. Prima facie showing of gender-based motivation

Additionally, Defendants submit that the Court overlooked the requirement in *Lehmann* that when the alleged harassment on its face is not an obvious form of sex or gender discrimination, then the plaintiff must make prima facie showing that she was discriminated because of her sex or gender. (DE 148-1 at 12). The fact pattern here is confounded by the fact that there is clear evidence of hostility and harassment, but ambiguity as to whether it was gender-based.

I explained in the Opinion that it was unclear whether the magnets would have appeared in the workplace but for Percella's gender. (DE 142 at 39). However, under such circumstances – where the discrimination is not obviously gender or sex-based – the Court was required to determine whether Percella made a prima facie showing that the alleged harassment occurred because of her sex:

> In such non-facially sex-based harassment cases a plaintiff might show that such harassment was accompanied by harassment that was obviously sex-based. Alternatively, she might show that only women suffered the non-facially sex-based harassment. All that is required is a showing that it is more likely than not that the harassment occurred because of the plaintiff's sex. For a female plaintiff, that will be sufficient to invoke the rebuttable presumption that the harassment did in fact occur because of the plaintiff's sex.

*Lehmann*, 626 A.2d at 454.

Here, Defendants submit that Percella did not establish other sex-based harassment. (DE 148-1 at 14). In fact, as explained in the opinion, Percella alleged that Defendant Waks' use of profanity constituted sexual harassment but failed to establish, or even allege, that Waks directed profanity at her *because* of her gender. (DE 142 at 38). Neither did Percella demonstrate that only women suffered the non-facially sex-based harassment because she did not establish that the magnets were placed only in areas where women worked or were specifically targeted at women employees. Because Percella focused

29

solely on the timeliness of Defendants' cross-motion, she failed to oppose any of these arguments.

*Lehmann* requires a plaintiff to first establish a prima facie case that she was discriminated against because plaintiff of her sex.  Because Percella failed to demonstrate that a single magnet with an ambiguous message was placed in her workstation because of her sex, I will grant Defendants' cross-motion for reconsideration and dismiss the sole remaining hostile work environment claim. *See Lehmann*, 626 A.2d at 454.

### III.   Conclusion

For the reasons set forth above, I will deny Plaintiffs' motion for reconsideration (DE 145) and grant Defendants' cross-motion for reconsideration (DE 148).

An appropriate order follows.


Dated: March 10, 2021


/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

30